THE UNION MANUFACTURING COMPANY OF NORWALK, Respondents, *v.* JOHN D. LOUNSBURY, THOMAS B. BUTLER, and others, Appellants.

The plaintiff, a corporation, being the owner of a certain patent for the manufacture of felt cloth, in 1848, entered into an agreement with the defendants, whereby it sold and assigned to them the right to make felt cloth under the patent, and agreed that they might enjoy such right during the unexpired term of the patent, and for and during the term for which the patent should be renewed, if a renewal thereof, should be obtained by the plaintiff.    The defendants were not to have the right to make such felt cloth of less than a specified fineness, and were to pay to the plaintiff one cent a yard on the felt cloth manufactured by them, "under and by virtue of the agreement."    A violation of the conditions, by the defendants, was to forfeit their right to manufacture.

The patent expired in 1850, and having been renewed by the inventor, the renewal was assigned to the plaintiff.

The defendants manufactured the felt cloth uninterruptedly, until September, 1857. The defendants having violated the agreement, the plaintiff notified them in writing, on the 28th August, 1854, that their right to manufacture having ceased and determined by their breach of the agreement, they were absolutely forbidden further to manufacture.—*Held*, nevertheless (GROVER and WOODRUFF, JJ., *contra*), in an action brought to recover the one cent per yard for the cloth manufactured by the defendants, the plaintiff could recover, as well upon that manufactured after as before such notice.

Nothing contained in the acts of congress, with reference to the rights of patentees and their assignees, or persons rightfully using patented machines, at the time of the renewal of the patent, prevented a recovery by the plaintiff against the defendants, of the agreed one cent per yard upon cloth manufactured after the renewal of the patent.

Since the Code, whether the agreement could be construed (with reference to the future renewal of the patent), a present sale of property then not *in esse* or not, and whether or not an action, strictly at law, to recover the purchase price of property not *in esse*, at the time of sale, can be maintained, the plaintiff has the right to recover the royalty upon the cloth manufactured after the expiration of the original patent, as well as before, the plaintiff having, in fact, through the inventor, procured a renewal and an assignment thereof to itself.

(Cause argued October 2d, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first district, affirming a judgment in fact of the plaintiff, upon the decision of PECKHAM, J., without a jury.

The plaintiff brought this action for the recovery of a royalty or tariff, of one cent per yard, upon certain felt cloth manufactured by the defendant, between the 1st of July, 1852, and the 24th of September, 1857. On the 28th day of December, 1848, the plaintiff, as assignee of the patentees, was the owner of a patent, granting the exclusive right of such manufacture to their assignors, and their assigns, for the period of fourteen years, from the 20th of October 1836, and entered into a covenant with the defendants for the use by them of the patented invention, for the unexpired period mentioned in the patent, and such subsequent period as the

patent might be renewed, if the renewal should be obtained by or for the plaintiff.

At the time when the agreement with the defendants was made, the plaintiff was not the owner of the right in the invention which might be secured by an extension of the patent. But that right was then owned by one of the original inventors and the personal representatives of the other, who was then deceased. After that agreement was made, and on the 3d day of November, 1849, the plaintiff, by an agreement or assignment, then made with it, by the surviving inventor and patentee, who had acquired the right of the heirs and personal representatives of the deceased inventor and patentee, to the extension of the patent, received an assignment and transfer of such right, together with the right of such survivor. And, on the 17th of October, 1850, the commissioner of patents, upon an application made to him for that purpose by the personal representatives of the deceased patentee, and the surviving patentee, certified that the patent ought to be extended, and the proper certificate extending the same, for seven years, from the 20th of October, 1850, was issued to them by him on the 21st day of that month. On the 28th of March, 1854, by a special act of congress, approved on that day, the patent was extended, in the names of the personal representatives of the deceased patentee, and of the surviving patentee, for the term of fourteen years from that time. The extension provided for by this act, and that obtained previously from the commissioner was assigned to the plaintiffs by a formal assignment, executed by the personal representatives and the surviving inventor, on the 5th of April, 1854. The patent was surrendered, and reissued to the plaintiffs as the assignee of the invention, on the 17th of March, 1857.

The defendants manufactured felt cloth under the patent as issued and extended, from the time they commenced under the agreement of 1848, until the 24th of September, 1857. The machine they used for that purpose during that time, was completed on the 28th of December, 1848; and the

justice found as a fact that they manufactured the cloth the agreement provided for their manufacturing, under the agreement up to the 24th of September, 1857. The agreement made with the defendants, provided that if they should manufacture a different kind of cloth from that designated and agreed upon, that their right under it should cease and determine, and that they should be no longer entitled to use and possess the same. It was found as a fact that the defendants did manufacture a kind of cloth they were prohibited from making under the agreement; and that on the 28th of August, 1854, they were notified by the plaintiff that they were on that account "forbid using or exercising such right for any purpose whatever." But it was further found that the plaintiff took no subsequent step after that "towards rescinding the agreement under which the tariff accrued," and the defendants continued to manufacture the cloth it was provided in the agreement they could make, until the 24th of September, 1857, but refused to pay any tariff subsequent to the 28th of August, 1854, the day such notice was served, and did not recognize the plaintiff's right to any such tariff.

Judgment was ordered for the plaintiff for the amount unpaid on the cloth manufactured of the kind stipulated for by the agreement, from the 1st of July, 1852, to the 24th of September, 1857. Exceptions were filed to the conclusions of the justice before whom the cause was tried, and an appeal taken from the judgment entered in pursuance of it, to the General Term of the Supreme Court in the first district, where the judgment was affirmed. The defendants then appealed to this court.

*Augustus F. Smith,* for the appellant, to the point that the defendants derived their right to the use of the patent, during the renewal, not from the agreement, but by force of the act of congress, cited *Chaffee* v. *Boston Belting Co.* (22 How. U. S., 217, 223); *Bloomer* v. *McQuewan* (14 How. U. S., 539); *Simpson* v. *Wilson* (4 id., 709); *Wilson* v. *Rousseau* (4 id., 646).

A right not *in esse,* and when to come *in esse,* not belonging

to a vendor, cannot be sold by him. "A naked possibility, unless coupled with an interest, is not a subject of sale." (2 Kent, 468, 1 note (last ed., p. 641); *Munsell* v. *Lewis*, 4 Hill, 635; Sheppard's Touchstone, 239; Bac. Abr. Grants D., 3; *Calkins* v. *Lockwood*, 16 Conn., 285; *Rowan* v. *Sharp's Rifle Co.*, 29 Conn., 328; Swift's Digest, 186; *Mitchell* v. *Winslow*, 2 Story R., 630.)

In this case, by the very act of renewal, the right of the defendants, to use the machine, was exempted from the renewal, and never did or could come *in esse*, so that the contract could be operative in respect to it. But if the contract ever had any validity, as respects the renewal, the defendants were licensees, and as such might, at any time, deny the title of the licensor, and refuse to pay, and they did so in fact, after July 1st, 1854. (Curtis on Patents, §§ 195, 199; *Wayne* v. *Maltby*, 3 Tenn., 438; *Cross* v. *Huntley*, 13 Wend., 386; *Chanter* v. *Leese*, 4 M. & W., 295; S. C., 5 M. & W., 698; *Woodworth* v. *Cook*, 2 Blatchford, 152, 160.)

The plaintiff cannot recover anything under the agreement subsequent to its rescission by them, in August, 1854. (*Woodworth* v. *Cook, supra; Terwilliger* v. *Knapp*, 2 E. D. Smith, 68; *Stamford Bt. Co.* v. *Gibbons*, 9 Wend., 327; *De Peyster* v. *Pulver*, 3 Barb., 284; 2 Parsons on Contr., 189, 190, 191; *Parmelee* v. *Oswego, &c., Co.*, 2 Seld., 74, 80.)

*John W. Edmonds*, for the respondent, cited, as to the objection that no valid contract could be made as to a thing not *in esse*, 1 Pars. on Con., 522, 523, and note K; 3 Sandf., 230; *Hibblewhite* v. *McMorin* (5 M. & W., 462); *Field* v. *The Mayor, &c. of New York et al.* (6 N. Y., 179); Curtiss on Pat., 283; *Hartshorn* v. *Day* (19 How., 211); Cowper, 766; 2 Edm. Sel. Ca., 368; 1 Greenl. Ev., § 197; 9 Cow., 274; Curtiss on Pat., 155, 156, 191; *Nesmith* v. *Calvert* (1 Wood & M., 34); *Gayler* v. *Wilder* (10 How., 477); *Hesse* v. *Stevenson* (3 Bos. & Pul., 565); *Hartshorn* v. *Day* (19 How., 211); *Pitts* v. *Hall* (3 Blatch., 201).

As to the effect of the notice, by the plaintiff, of a rescis-

sion, he cited, 2 Pars. on Cont., 678; *Dubois* v. *Del. Canal Co.* (4 Wend., 285); *Franklin* v. *Miller* (4 Ad. & E., 599).

DANIELS, J.   By the agreement, which forms the foundation of the present action, the plaintiff sold, assigned and conveyed to the defendants the right of making and manufacturing at the establishment, then occupied by the firm in Norwalk, felt cloth of the usual width of broadcloth, by means of a single set of machinery usually employed in the manufacture of felt cloth, and for the manufacture of which the plaintiff owned the patent.   To this extent there can be no doubt entertained, but that it was intended by the parties that the sale should be one taking effect *in praesenti ;* for that is the clear import of the language they made use of for the · purpose of expressing their design.   But this present, absolute right to make use of the invention was limited by the agreement to the period for which the patent then owned by the plaintiff had been issued.   The sale was for the then unexpired term of the patent, and no longer.   Beyond that there was no present sale, and no terms used indicating the design of making one.   After that, the rights and obligations of the parties were rendered dependent upon a renewal of the patent being obtained by or for the plaintiff.   If it failed in that, the relations of the parties under the agreement ceased at that point.   But if a renewal should be obtained by and for the plaintiff, then the agreement proceeded to declare and define what the rights and obligations of the defendants should be in that event.   Not in the form of the sale of an existing right, but in view of a contemplated contingency subsequently arising.   These were, that the defendants should be entitled to make use of the set of machinery referred to, for and during the term for which the patent should be extended, if a renewal should be obtained by or for the plaintiff, upon payment of one cent a yard for the cloth made by means of it.   Instead of being a sale, and therefore obnoxious to the objection that the plaintiff undertook to sell what it did not own, and which in fact had no existence,

it was a declaration of what the rights, privileges and obligations of the parties should be in case the future circumstance it was evidently contemplated might afterward occur, should actually be found to come into existence.   In that event, and only then, the defendants were to have the continued right to use the set of machinery in manufacturing the cloth alluded to during the period for which the patent should be extended. There was nothing unusual or uncommon in this part of the agreement, and it was not in conflict with any provision or principle of law or public policy.   The necessities and convenience of future operations require that such agreements and stipulations should be maintained and enforced when the contingency arises on which they are to become obligatory on the parties entering into them.   But even if the agreement depending upon the renewal had been made in the form of a present sale, it would be too late for the defendants to insist that it was legally inoperative as such, after enjoying, as they were found to have done in this case, the full benefit of the covenant concerning it.

Before the time had arrived, when the patent could be lawfully extended, the plaintiff secured the right to the extension in case that should be granted.   This was fully provided for by the assignments received by the surviving patentee from the heirs and personal representatives of the deceased patentee, and the assignment made by him to the plaintiff.   Under the laws of the United States, these were valid instruments, for by those laws the right of an inventor to a patent may be assigned, and patents may be, and in fact very commonly are, issued to the assignees of the inventor.   (U. S. Stat. at Large, vol. 5, 193, § 6; Curtis on Patents, 3d ed., § 168.)   After these assignments were made the patent was extended; first for seven, and then for fourteen years.   The extensions were made in the names of the personal representatives of the deceased and the surviving patentees.   But under their previous assignments they were necessarily held by them for, and turned to, the sole benefit of the plaintiff and such persons as had de ived rights under them as

the owner of the original patent. This is the legal effect given to such instruments under the patent laws of the United States. (*Gayler* v. *Wilder*, 10 How. U. S. Rep., 477.) And which it was found by the court would have been followed by the courts of Connecticut, if the agreement in controversy had been before them for construction. In addition to that, all these assignments contained express covenants for the execution and delivery of such further instruments as might be requisite for the effectual transfer of the extensions that should be granted. And in performance of two of those covenants, the persons, in whose names the extensions were made, joined in a direct assignment of them to the plaintiff. It is plain, therefore, under these instruments, and the law applicable to them, that when the extensions of the patents were obtained, they were obtained for the plaintiff within the meaning of those terms as they were used in its agreement with the defendants.

But it was insisted, on the part of the defendants, that they derived the right to use the machinery mentioned in the patent, after that had expired from the act of congress, and not from the extensions; and that they are therefore not liable to pay the plaintiff the stipulated compensation. This argument was predicated upon that portion of the act, which provides that, when patents are renewed, the benefit of such renewal shall extend to assignees and grantees, of the right to use the thing patented to the extent of their respective interests therein. (5 U. S. Stat. at Large, 125, § 18.) But this fails to confer the right claimed under it. For it only protects such interest, as the assignee or grantee had in the use of the thing patented, and nothing whatever beyond that. It secures and maintains the right or interest the party has at the time of the extension or renewal, without conferring any additional right or privilege. In the present case, that was a qualified one. It was the right to use the machine invented, during the extension of the patent, upon the payment of the stipulated compensation; and this is fully maintained by the judgment recovered in this case. To the extent of the defendant's

right to use the thing patented, they have the full benefit of the statute, even if they are required to pay the compensation they agreed to pay by this covenant. For that completely protects their interest in the thing patented, precisely as it was originally agreed they should enjoy that interest. And the statute has provided for no right or privilege to the assignee or grantee beyond that. Its object was to maintain just such rights as the grantee or assignee had in the thing patented ; not to confer one that it had previously been expressly agreed in effect that he should not have, unless the compensation agreed upon was paid for it. The construction contended for, would confer a new interest or right, instead of doing what it was designed to accomplish, that of protecting previously existing rights simply.

It was also insisted, that the last proviso of the act of 1854, extending the patent for fourteen years, discharged the defendants from the payment of the manufacturing tariff after that time. By this, it was provided, " that all persons now enjoying the lawful use of the said invented machine, or any part thereof so patented, and the purchaser of any such machine, or any part thereof, may continue to use the same, notwithstanding the provisions of this act." (10 U. S. Stat. at Large, 776, § 7.) That is to say, those persons should continue to have precisely the same rights in the invention, which they would have had, if the act had not been passed. It was, in effect, providing that the persons having such lawful right, should continue to enjoy it, precisely as it had been previously acquired. There is nothing contained in this proviso indicating it to have been the intention of the law, to release persons who had secured such rights from the payment of the sums they had incurred on account of them. It leaves them precisely as they would have been, if the act had not passed, so far as such obligations were concerned. For it secures the continuance of their right, without affecting the contracts they may have made for the purpose of obtaining them, in any manner whatever. No language was made use of, that would have a tendency to discharge the persons referred to,

from any of the burdens, they had voluntarily imposed upon themselves, in acquiring the interests protected.

The defendants had no right to use the patented machinery, in the manner specified in the agreement, without paying the plaintiff the compensation they had agreed to pay for that use. They could lawfully make use of the invention on no other terms. For they had bound themselves to that effect, by their covenant. The notice served upon them, forbidding them using or exercising the right mentioned in the agreement, after the twenty-eighth of August, 1854, was therefore no defence for them, even from that time; for they did continue to use it notwithstanding the notice; and that they could not lawfully do, without rendering themselves liable for the consequences they had covenanted should result from such use. They could not refuse compliance with the terms of the notice, and still claim that protection under it, which could only result from complying with its injunction. The parties could waive the consequences of the defendants' breach of the covenant; and that they did, by the defendants' continued use and enjoyment of the rights secured to them by means of it, and the subsequent acquiescence of the plaintiff in that use.

The judgment should be affirmed.

GROVER, J. (dissenting.) The right to manufacture felt cloth, under the patent given by the plaintiff to the defendant, by the agreement made in 1848, was a good consideration for the covenant of the defendants. That covenant was to pay to the plaintiff one cent per yard for all such cloth manufactured by them under the agreement. The consideration would have been sufficient to uphold, not only a covenant for the payment of that or any other stipulated sum for cloth manufactured during the life of the patent, but for cloth manufactured after its expiration. This is too clear for discussion. The inquiry then is, for what period of time did the defendants, by the true construction, undertake to pay. To determine this, the entire agreement must be examined, to ascertain therefrom the intention of the parties in this respect.

By the agreement, the plaintiff gave the right to the defend-
ants, to manufacture upon the terms therein stipulated, for
and during the unexpired term of the patent, and for and
during the term for which the same shall be renewed, if a
renewal thereof shall be obtained by or for the plaintiff. It
was in consideration of, and in reference to this right, that the
defendants covenanted to pay. The covenant to pay, in point
of time, is coextensive with the right attempted to be con-
ferred upon the defendants by the agreement, and that
embraces not only the unexpired period of the patent, but
also, that of a renewal, if obtained by or for the plaintiff.
From the facts found, it appears that the patent expired in
1850, and that a renewal was granted in the name of the
patentees, by the commissioners of patents, for seven years;
and that such patentees, thereafter, in pursuance of an agree-
ment previously entered into with the plaintiff, transferred
to it all their right thereto. This authorized the conclusion,
that the renewal was obtained by or for the plaintiff, and by
the true construction of the defendants' covenant, bound them
to pay to the plaintiff the sum stipulated for all cloth manu-
factured during the latter period. The counsel for the appel-
lant, insists that the act of congress, under which the renewal
was granted, gave the defendants a right to manufacture, not-
withstanding such renewal, and that the defendants did not,
therefore, thereafter manufacture under the right conferred
by the agreement with the plaintiff, but under the right given
to them by said act. The eighteenth section of the act (5 U.
S. Stat. at Large, 125), provides, that the benefit of such renewal
shall extend to assignees and grantees of the right to use the
thing patented, to the extent of their respective interests
therein. This section confers the benefit of the renewal only
upon persons who are assignees or grantees, of the right to
use the patent to the extent of their interest therein. The
defendants, under the agreement, acquire the right to use the
patent, only by paying to the plaintiff a royalty of one cent
per yard, for all cloth manufactured. This was the extent of
their right to use the patent, and all the right conferred by

the above section. (See *Chaffee* v. *The Boston Belting Co.*, 22 Howard U. S., 217.) Had not the agreement provided for a continuance of the right, during a renewal of the patent, the defendants could have continued such use, by virtue of the act, only by paying the sum agreed upon therefor, during the existence of the original. If there be doubt, as to whether this is the true construction of the statute, the parties have obviated the difficulty in this respect, by providing in the agreement for the use of the patent by the defendants, during the renewal, if any, and for payment of the royalty therefor to the plaintiff. The defendants' counsel, further insists, that the renewal was neither a right or thing in existence at the time of the agreement and, therefore, not the subject of a contract, and cites numerous authorities to support his position. An examination of these authorities shows that a thing not *in esse* cannot be sold by contract so as to vest the legal title thereto in the purchaser upon its coming into existence; but other authorities show that contracts relating thereto, if fairly made, will be enforced in equity. (*Field* v. *The Mayor of N. Y.*, 2 Seld., 179; *Hartshorn* v. *Day*, 19 Howard, 211; *Munsell* v. *Lewis*, 2 Denio, 224; reversing same case, 4 Hill, 224.) This sustains the recovery in the present case. The distinction between suits at law and in equity having been abolished by the Code, obviates the necessity of determining whether an action at law will lie upon the contract. The counsel for the appellant further insists that the defendants were relieved from their obligation to pay the royalty in future by an act of congress, passed March 28th, 1854. By that act the patent was extended fourteen years from that date. The act contains the following proviso: "And provided further that all persons now enjoying the lawful use of the said invented machine, or any part thereof so patented, and the purchaser of any such machine, or any part thereof, may continue to use the same notwithstanding the provisions of this act." This proviso shows that congress did not, by this renewal, intend at all to interfere with vested rights in the use of the patent, but that those who had acquired such

rights should continue to enjoy them in the same manner as though the act had not passed. This does not affect the rights of these parties. The defendants, under the agreement, had the right to use the patent for the term of the renewal granted by the commissioner of patents, upon paying the royalty, and the proviso simply preserved this right to them, the same as before the passage of the act. The agreement did not embrace the renewal under the act of congress, as that speaks of but one renewal, evidently referring to a renewal to be granted by the commissioner of patents under the then existing law. The remaining question is, whether the plaintiff could recover the royalty upon the cloth manufactured by the defendant subsequent to the service of the notice by the plaintiff upon them, forbidding the further manufacture by reason of the violation of the agreement by them. The agreement contains the following clause limiting the right of the defendants to the use of the patent, and upon the breach of either of the aforesaid conditions said right is to cease and determine, and said party of the second part to be no longer entitled to use or possess the same. It appears, from the finding of facts, that the defendants violated one of the conditions of the agreement, and that thereupon the plaintiff served upon the defendants the notice forbidding their further use of the patent by reason thereof. The judge, notwithstanding, held the defendants were liable upon the agreement, for cloth manufactured subsequent thereto. In this, I think, he committed an error. It was provided expressly that a violation of the agreement by the defendants should terminate their rights under it. This left it at the election of the plaintiff to terminate the agreement, in case of such violation, or continue it in force. The resolution of the directors and of the respondent's notice served thereupon, was an election to terminate the agreement and notice of such election to the defendant. It can hardly be contended that had the plaintiff sued the defendants for a violation of the patent for manufacturing cloth thereafter the agreement would have been any defence to the

action. If not, in force, for this purpose, it clearly was not for the purpose of a recovery of the stipulated price of manufacturing. The plaintiff thereafter was left to his remedy for the violation of the patent. I have examined the findings to ascertain, if practicable, the amount recovered for the manufacture of cloth subsequent to the service of the notice, with a view to the alternative modification of the judgment, but cannot. The judgment must therefore be reversed and a new trial ordered.

HUNT, Ch. J., MASON, LOTT, JAMES and MURRAY, JJ., concurred with DANIELS for affirmance.

WOODRUFF, J., was for reversal upon the grounds stated in GROVER's opinion.

Judgment affirmed.