By the Court.—Freedman, J.
—A patent for illuminated basements and basement extensions, etc., was issued to the plaintiff in 1867, and re-issued August 6, 1878.
By an agreement, dated November 21, 1878, the plain *377 tiff agreed to, and did, license, among others, the defendants to manufacture and sell within certain territorial limits the articles covered by the patent of 1867, as re-issued in 1878.
The defendants thereafter, manufactured and sold these articles, and up to the autumn of 1881, under the said license, they accounted for the articles so manufactured, and sold and paid royalties thereon. Then they refused to account or pay any longer, though they continued to manufacture and sell, whereupon, in October, 1882, this action was brought, in which the plaintiff, among other things which will be hereinafter considered, asks for a forfeiture of the license, the cancellation of the agreement, and an accounting.
If these were substantially the only facts and the only relief sought, the jurisdiction of the court to entertain the action and to grant relief would be beyond question.
But upon the trial the plaintiff found it necessary to move for leave to amend the complaint by setting up a reissue of the patent on September 27, 1881. The motion was granted and the amendment allowed, and thereupon leave was granted to the defendants to amend their answer by inserting as follows : “ The defendants, answering the amended complaint of the plaintiff, allege that the re-issued patent of September, 1881, is invalid and void, for the reason that it claims more than the patent of 1878 ; and that its descriptions and specifications do not correspond with those of the patent of 1878; and that it also omits specifications and claims made in the patent of 1878. And further answering, defendants say that the court has no-jurisdiction over the issue thus raised.”
The trial proceeded upon the issues thus amended, and the plaintiff, upon proof of the re-issue of September 27, 1881, and of the refusal of the defendants to account and pay since that time, though they continued to manufacture and sell, had judgment against the objections and exceptions of the defendants, who throughout insisted that the court had no jurisdiction.
*378 The questions presented by these exceptions áre of great importance.
A grant to a patentee of an exclusive right to manufacture and vend an article described therein, is a grant of property ; and if the validity of the patent is unquestioned, state courts will protect the owner of such property in the enjoyment thereof, by means of a decree of injunction, to the same extent as they would do, were the subject matter of the litigation of any other description. But where the validity of the plaintiffs patent is put in question by the pleadings in a state court, and the defendant presents such proofs upon the trial as render it necessary for the court to examine and pass upon conflicting patents or claims of priority in invention, in- order to determine whether the plaintiff has such a property in the subject matter of the grant as entitles him to the exclusive and unmolested use of it, and an objection is taken to the jurisdiction of the court for that reason, the bill must be dismissed ; for, in such cases, the jurisdiction is in the courts of the United States exclusively (Hovey v. Rubber Tip Pencil Co., 33 Super. Ct. 522; affirmed 57 N. Y. 119).
There is, however, a class of' cases in which the defendant cannot question the validity of the plaintiff’s patent, because by his contract he has estopped himself from so doing, and of these a state court may take cognizance. In them the question concerning the validity of the patent is merely a question collateral to the main issue, and goes only to the question whether there is a consideration to support the promise to pay. A case arising on a contract to pay royalties, or, in other words, a case between patentee and licensee, falls generally within the class last referred to, and in every such case the true rule to be deduced from the authorities, as stated by the court of appeals in Marston v. Swett (82. N. Y. 526), is as follows: “ Where the patent is apparently valid and in force, the party using it, receiving the benefit of its supposed validity, is liable for royalties agreed to be paid, and cannot set up as a defense the actual invalidity of the patent. The reasons for the *379 rule are that the party has got what he bargained for ; that he cannot be allowed at the same time to affirm and disaffirm the patent; and that he cannot in this way force the patentee into a defense of his right and compel him to try it in a collateral action. While the manufacture goes on under such an apparently valid patent, it is presumed to be under and in accordance with the agreement to pay royalties. If the manufacturer does not so intend, and chooses to make the patented article, not under the patent but in hostility to it, he must give notice of that intention, in order that the presumption may not attach or the patentee be misled. But if the patent is annulled or destroyed by due and effective legal proceedings and priority of invention and a patent'is awarded to another, no notice is necessary, for. there is no presumption or inference of manufacture under a patent judicially avoided and anulled. It ceases to exist. The manufacture is either absolutely free or an infringement upon the rights of the prior inventor, or in submission to his claims.”
Mow the parties to the present action, in the agreement of November 21, 1878, and the license executed contemporaneously therewith, did make provision concerning reissues of the patent. By the agreement it was provided that the license should continue for the full term of the patent and for any term of any extension or renewal.” The license which was also executed in the form of an agreement under the hands and seals of the parties to this action, contains a similar provision together with the defendant’s acknowledgment of the validity of the letters patent and their express consent that the plaintiff may, “ without prejudice to this agreement hereafter re-issue, when and as often as she shall choose, the said patent of August 27, 1867, as re-issued August 6, 1878.”
These provisions, taken in connection with the other facts already referred to, would seem to be a complete answer, within the rule as stated by the court of appeals, to the claim of the defendants that the court had no jurisdiction to determine the issues, especially as no notice had *380 ever been given to the plaintiff that the defendant had elected to manufacture and sell in hostility to the patent as re-issued in 1881.
It. is insisted, however, that the words, “ As re-issued August 6, 1878,” are words of limitation which restrict the consent given to a re-issue that corresponds with the re-issue of 1878; that, ■ inasmuch as the re-issue of 1881 covers more ground than the re-issue of 1878, neither their consent nor their license, attached to it, and that consequently no notice was necessary.
It is true that the re-issue of 1881 corresponds neither with the re-issue of 1878, nor with the original patent, inasmuch as it embraces more ground and more claims than either. To enumerate the points of correspondence and of difference, would serve no useful purpose. Suffice it to say that áfter all, it is for the same and not for a different invention, and that at most the plaintiff included therein additional matters which perhaps were not strictly patentable because not fairly included in the prior specifications. But it is difficult to perceive why the defendants should be heard to complain of this, as in this respect the re-issue of 1881 was rather a benefit than an injury to them. At- any rate the question is not now whether the plaintiff patented too much, but whether the re-issue of the patent was within the contract existing between the parties.
Construing the contract, as I think it should be construed, I cannot satisfy myself that the words now relied on were used as words of limitation in the sense contended for. They evidently were used as words of description. The very object and effect of a re-issue is to make valid specifications which originally were defective and insufficient, and the original patent is therefore deemed to have been continued as re-issued, though the re-issue involves a surrender of the original letters. Nevertheless, the re-issue and the proceedings on which it is founded, liave relation to the original transaction. So a second re-issue relates back to the original patent, and not to the first re-issue, and it is a rule in direct proceedings to determine the *381 validity of a second re-issue that such re-issue must be compared with the original patent and not with the first re-issue, and that, unless it is on its face for a substantially different invention than the original, it is valid. These matters and considerations must be presumed to have been in the minds of the contracting parties when they completed their agreements. They evidently intended, and their interest was, that both the patent and the license should be made to cover as muchas possible, and they contracted accordingly, and other covenants were made with reference thereto. The plaintiff bound herself not to license other new parties except as provided in the agreement, and she also bound herself not to manufacture and sell, herself. The defendants on the other hand, who, up to that time ■ had been infringers and had been sued, on securing immunity from prosecution and in taking the license and accepting the privileges thereby conferred, not only recognized the validity of the patent and agreed to •extensions and re-issues, but they also agreed to pay a royalty of 70 cents per square foot, from and after the time of the determination by judicial decree of the validity of the patent, and until such time, 30 cents per square foot, and to continue such payment of 30 cents even after an adverse decision, provided the plaintiff should appeal therefrom within three months. 0 Provision was also made for the prosecution of infringers for the benefit of the licensees. It therefore, clearly appears upon a full consideration of all the covenants between the parties, that in using the words “as re-issued August 6, 1878,” it was never intended to provide thereby that any future re-issue should strictly correspond with the re-issue of 1878, but that the defendants, on account of advantages to be derived from other •covenants, meant to confer general authority upon the plaintiff to procure re-issues, when and as often as in the exercise of good faith she might deem it proper.
Moreover, the defendants may be deemed to have heretofore admitted that the re-issue of 1881 was necessary and proper. In a suit brought for the benefit of the licensees *382 named in the agreement of November 21, 1878, against Tice and Jacobs, the complaint was verified by Ingalls, one of the' present defendants. Among other things it alleged that “ said patentee finding that said specification was still defective and insufficient, surrendered said patent to the commissioner of patents, in accordance with the statutes of the United States in such cases made and provided, and having amended the claim and specification in accordance with the decision of said commissioner in the premises, and in all other things complied with the statutes of the United States made and provided in such cases new letters patent of the United States for the same invention were, on the 27th day of September, 1881, duly issued and delivered to said Elizabeth Adelaide Lake Hyatt, according to law, and entitled “ Illuminating Roof and Roof Pavement,” whereby there was granted unto her, for the then unexpired term of seventeen years from the 27th day of August, 1867, the full and exclusive right and liberty of making, constructing, using and vending to others to be used, the said invention and improvement, a description whereof is given in the schedule annexed to the said reissued letters patent.”
From the views expressed, and it further appearing that the re-issue of 1881 was procured by the plaintiff in good faith, and upon the assumption that it was necessary for the preservation of the interests of all parties concerned, and the grant of the re-issue by the commissioner of patents being prima facie evidence of the validity of the patent as re-issued, it follows as a necessary corollary, that the defendants, at the trial, could no more be permitted-to deny the validity of the re-issue of 1881, than they could have been permitted to deny the validity of the original patent, or of the patent as re-issued in 1878, and that the court had ample jurisdiction to determine the issues and award the proper judgment. The defendants had evidently got from the plaintiff just what they had bargained for, and nothing short of the annullment of the patent re-issued in 1881, by a final decree of the supreme court of the United *383 States could relieve them from the obligation voluntarily assumed by them, as long as the plaintiff herself did not rescind on account of the breach committed by the defendants.
The only remaining questions which require to be noticed relate to the measure of relief and the form -of the judgment.
The service of the notice by the plaintiff on January 12, 1882, declaring the license forfeited, is not of itself a bar to plaintiff’s claim to an accounting under the contract since that time, because the defendants continued to manufacture and sell notwithstanding the notice (The Union Mfg. Co. v. Lounsbury, 41 N. Y. 363). Nor was this court deprived in consequence of such service of any part of the-jurisdiction it otherwise had to grant relief commensurate to the violations of the contract obligations found to have been committed within the issue raised by the pleadings (Hartell v. Tilghman, 99 U. S. 547).
The court therefore would have had the power not only to direct the accounting which was ordered, but also t» grant injunctive relief against threatened continuous violations of the contract-, if it were not for one consideration, which is, that the judgment as a whole must be founded either upon an affirmance or a rescission of the contract, for the plaintiff cannot be permitted to affirm in part and rescind in part.
By taking a judgment, as prayed for in the complaint, declaring the license forfeited and directing that the same be delivered up to the plaintiff to be cancelled, the plaintiff' elected to take a decree of rescission of the contract" which puts an end to the contract and entitles her only to an accounting qp to the time of the entry of the judgment and disentitles her to injunctive relief against future acts. This sets her free to license other parties, and to manufacture and' sell herself, but it also frees the defendants ■from the further observance of the obligations of their agreement. Thereafter they can only be proceeded against' by the plaintiff as infringers of her patent, and that must: *384 be done in the courts of the United States. The fact that the defendants accepted that part of the judgment which directs the surrender and- cancellation of the license, and appealed only from those parts by which an accounting was directed and injunctive relief granted, can make no difference. Under the peculiar ‘ circumstances of this case as affected by the question of jurisdiction, these different parts of the judgment are not so connected and dependent that it can be held, that the defendants by accepting one .waived their right of appeal .from the others, especially as the plaintiff can have no right to any other judgment than one which is consistent throughout. Having elected to sue for a rescission, for the complaint expressly asks that the license and the agreements be declared forfeited and be delivered up to be cancelled, and followed up the election by taking judgment in accordance therewith, the plaintiff must be held to her election.
The judgment should therefore be modified by striking from it the injunctive relief granted, by limiting the accounting to the time of the entry of the judgment, and by adding a provision declaring all the agreements between the parties as well as the license at an end, and enjoining all the parties to the action from claiming any right or rights under or by virtue by the said agreements or license subsequent to the entry of the judgment, and as thus modified it should be affirmed without costs to either party upon this appeal.
Order to be entered hereon to be settled on notice.
Sedgwick, Ch. J., and O’Gorman, J., concurred.