## 188                    DENISE *v.* SWETT.

SARAH V. DENISE, Respondent, *v.* ALBERT L. SWETT, Appellant.

*Manufacture of a patented article — implied contract to continue to pay royalties — barrel headers and presses — methods of construction and operation — jurisdiction of the State courts — licensee estopped from questioning the validity of patent.*

A manufacturer obtained from the owner of a patent an exclusive license to manufacture and sell the patented article, subject to the payment of a stipulated royalty; the contract, which was made for one year, contained a provision that it might be extended for any length of time which the licensee might desire, within the life of the patent, and also provided that in case of a violation by the licensee of the terms of the agreement, it should, at the option of the owner of the patent, be and become null and void, and he might resort to any legal remedy, and that the manufacturer should not thereby be discharged from liability for royalty due at the time of the exercise of such option.

After the contract had been extended several times from year to year by mutual consent, negotiations for a further extension were had at about the end of the term of the last extension, but they proved fruitless, and the patentee thereupon notified the licensee that negotiations for an extension were ended; the licensee accounted for and paid the royalties accrued up to the end of the year for which the license had been last extended, and thereafter proceeded to manufacture and sell articles substantially the same as the patented article, but refused to continue the payment of royalties, although the patent was still in force.

The owner of the patent took no measures to prevent such manufacture and sale, but after it had continued for some time, sued the manufacturer to recover royalties at the rate fixed in the contract, and recovered judgment therefor.

*Held,* that the recovery was to be sustained on the ground of an implied contract which was manifested by the conduct of the defendant.

That having once settled upon the existence and terms of the contract there necessarily arose an implied promise on the part of the defendant to pay for the use of the patented invention under that agreement the sum therein provided for.

That the fact that the owner of the patent affirmatively objected to such further manufacture and refused to continue the contract under the old terms, did not preclude a recovery, for the reason that the defendant ought not to be heard to deny the existence of a contract without which he would not originally have begun the manufacture and sale of the patented article.

That the conduct of the parties created a virtual extension of the original contract.

The articles manufactured and sold by the defendant were barrel headers and presses, and it appeared that the only difference between the machines made before the alleged expiration of the contract between the parties and those made thereafter, consisted in the mode of fastening the follower to the screw, but each arrangement served the purpose, and that only, described in the specifications annexed to the patent.

*Held,* that the two methods were "equivalents," and that the machines were substantially the same.

The answer contained an averment that the machines on which royalties were sought to be recovered, under the contract, were not covered by the plaintiff's patent, and did not infringe it.

*Held,* as the only effect of such allegation was to raise a question of comparison between the machines manufactured at different periods, which comparison was material for the sole purpose of determining whether during the period in suit the defendant had manufactured and sold machines answering to the description contained in the contract, and if so, how many, that no question of infringement was raised, and consequently the State court was not deprived, by reason of such allegation, of jurisdiction of the action for royalties brought upon the contract.

The defendant urged that the principle of the plaintiff's patent had been in public use before his patent was issued, and, therefore, the patent was useless.

*Held,* that the defendant, having entered into the contract with the plaintiff, and having taken from him a license to make and sell the subject of the patent, could not, for the purpose of a defense to an action to recover royalties, question the validity of the patent.

APPEAL by the defendant, Albert L. Swett, from a judgment of the Supreme Court entered in the Monroe county clerk's office, October 5, 1892, on the report of a referee.

*E. L. Pitts,* for the appellant.

*Q. Van Voorhis,* for the respondent.

MACOMBER, J.:

The defendant was formerly a member of the firm of Sampson & Swett, a copartnership engaged in a manufacturing business. This copartnership was dissolved in the month of January, 1890, and the defendant assumed all obligations of the firm then outstanding, and agreed to indemnify Sampson from any loss, damages or costs growing out of their joint business.

On the 3d day of July, 1882, an agreement was made between one Henry H. Brown, of the first part, and Sampson & Swett, of the second part, by which Brown, who was the owner of an invention known as an improvement in barrel headers, for which, and also for an improved screw barrel press, letters patent had been issued, agreed to license for the term of one year from the 1st day of July, 1882, Sampson & Swett to manufacture and sell, exclusively, such improvements within the entire territory covered by the letters. Brown further agreed, upon receiving a notice of at least

sixty days before the expiration of such license, to extend the contract for any length of time within the life of the patents which Sampson & Swett might desire. Sampson & Swett, on their part, agreed to pay for the use of such patented inventions a license fee or royalty of three dollars and fifty cents upon each and every dozen presses manufactured and sold by them. The contract contained a further clause to the effect that in case the licensees should violate the terms of the agreement in respect to payments, etc., "this contract and all the provisions thereof shall, at the option of the party of the first part, be and become in all things null and void, and the party of the first part may resort to any legal remedy, and the party of the second part shall not thereby be discharged from liability to the party of the first part for any license fees, commissions or royalty due at the time of the exercise of such option."

Under this agreement, the defendant and his copartner began to manufacture and sell the machines, and continued to manufacture and sell the same up to the time of the dissolution of the defendants' firm, and after such dissolution this defendant continued alone to manufacture and sell the same up to the beginning of this action, which was on November 16, 1891. The defense interposed consisted of a denial of liability for the manufacture and sale of such machines after the month of June, 1886, when, as it is claimed, the above contract was terminated. The further defense is, that the machines manufactured by the firm and by the defendant after the last-named date differed materially from the machines manufactured and sold under Brown's patents.

The referee, in accordance with a clear preponderance of the evidence, has found in his report that there was no substantial difference in such machines. It is further abundantly established by the evidence that after the month of June, 1886, and up to November, 1891, there were manufactured and sold by Sampson & Swett and by the defendant Swett, in all, 529 dozen upon which no royalties or license fees had been paid, for which, at the rate of three dollars and fifty cents per dozen, this plaintiff, as assignee of Brown, brings this action, and judgment in the sum of $1,851.50 was accordingly directed in behalf of the plaintiff.

It is contended by the learned counsel for the appellant that the agreement of 1882 was not continued after June 30, 1886, and was

not in force or effect between the parties thereto after that date. This proposition was the subject of several requests made to the referee to find as a fact.

It is true that the agreement between the parties was not in terms extended by Brown beyond June 30, 1886. From that date to the beginning of this action, the defendant denied all liability to Brown, and his counsel now urges that inasmuch as the contract had not in words been extended, there can be no recovery, but that the plaintiff's remedy, if any, is by an action for the infringement of his patents, and that such action is solely cognizable by the Federal courts. But the recovery, we think, may in this case be sustained upon the ground of an implied contract which was manifested by the conduct of the defendant and his copartner. Having once settled upon the existence and terms of the contract in words, there would necessarily arise an implied promise on the part of the defendants to pay for the use of such patented inventions under this agreement the sum therein provided for. And, notwithstanding the fact that the plaintiff's assignor, Brown, affirmatively objected to such further manufacture and refused to continue the contract under the old terms, it does not, as it seems to us, preclude a recovery, for the reason that the defendant ought not to be heard to deny the existence of a contract without which he would not originally have begun the manufacture and sale of barrel headers. Having once entered into contractual relations with the owner of the patent of the character above mentioned, it cannot be permitted to the licensee to repudiate liability measured by the terms and conditions of the contract.

The learned referee, James C. Smith, has written the following opinion, which we adopt, fully covering other branches of the case : " The agreement, which was made in July, 1882, for the term of one year, contained a provision that it might be extended for any length of time which the defendant's firm might desire, within the life of the patents therein mentioned. By mutual consent, it was extended from year to year, until July, 1886. Negotiations for a further extension were had about that time, but they proved fruitless, and Brown gave notice that negotiations for an extension were ended. Thereupon a settlement was had, and the firm paid royalties, at the rate stipulated in the agreement, on all the barrel headers and presses

made and sold by them prior to July, 1886. Nevertheless, the firm while it existed, and the defendant, after he acquired the interest of his partner in the firm, continued to manufacture and sell barrel headers and presses, which the plaintiff contends were substantially like those which had been previously made and sold by them. That contention is controverted by the defendant, he asserting that there were material differences between the machines made subsequently to the 1st of July, 1886, and those made previously.

" The evidence on that point supports the plaintiff's contention. A specimen of each class of machines was produced at the trial, and testimony was given as to their differences. The only difference appears to be in the mode of fastening the follower to the screw. The defendant testified that the machines made by him prior to July, 1886, had ' a pin through the screw under the washer; the pressure of the screw came on top of the washer.' Those made since ' have a groove turned in the lower end of the screw, and is held in place by a washer made in two parts, the washer fitting into the groove in the screw; the pressure of the screw bears upon a separate casting placed on the inside of the follower and under the washer.' The substance of the testimony is understood to be that the fastening in the earlier machines was by means of a pin through the end of the screw; in the later ones, it was by means of a groove at the end of the screw, and a washer fitting into the groove. So far as can be gathered from the testimony, each arrangement seems to serve the purpose (and that only) described in the specifications annexed to the patent, of ' fastening the follower to the end of the screw, but swivelling it in place, so that it can turn freely in either direction.' ' Swivel ' is defined by Ainsworth, in his dictionary, as ' something used in or on another body, so as to turn round in or upon it.' The definition applies to either arrangement.

" It does not appear that either method differs from the other in practical operation or utility, or even in durability or cost. The two seem to be ' identical in function, and substantially identical in performing that function,' and so are ' equivalents.' Walker on Patents (2d ed.), § 362.

" It must be held, therefore, that the machines made during the two periods were substantially alike. That being the case, I think the defendant and his firm, in continuing to make and sell the

machines after June, 1886, in the circumstances shown, became liable to pay the royalties thereon fixed by the contract, notwithstanding there was no express extension of the contract, and notwithstanding the notice then given by Brown that negotiations for a further extension were at an end. The subsequent conduct of the parties, in the circumstances, was a virtual extension of the contract.

" The case of the *Union Manufacturing Co.* v. *Lounsbury* (41 N. Y. 363) seems to be an authority for that position. The learned counsel for the defendant suggests that that case is distinguishable from this, by reason of the fact that there the notice forbidding the further use of rights under the agreement was given during the lifetime of the agreement, while here the notice that negotiations for an extension were ended was not given until the agreement had expired. It is true that the term covered by the extension of the agreement in question expired with the month of June, 1886, and the notice referred to was given at about that time, as has been remarked, but the agreement, by its terms, was to be extended for any length of time during the life of the patents that the defendant's firm might desire, the firm giving notice of such desire. Nothing was done by Brown towards rescinding the agreement or prohibiting the use of the rights conferred by it, beyond giving the notice already mentioned. It was competent for the parties to continue the agreement, notwithstanding that notice, and to waive the formalities prescribed by the agreement. The desire of the defendant and his firm to extend the agreement was manifested by their continuing to use the right, which it gave them, of manufacturing and selling the machines, and the plaintiff's acquiescence in such use was shown by his taking no measures to prevent it and by his suing for the royalties provided for by the agreement. There does not appear to be any substantial difference between this case and that of the *Manufacturing Co.* v. *Lounsbury,* so far as the point under consideration is concerned.

" The cases cited by the defendant's counsel, which hold that a State court has not jurisdiction to try the question of an infringement of a patent for an invention, have no application to the case in hand. There is no question of an infringment here. The action is on the contract. The only allusion to an infringement in the pleadings is

found in one of the counts in the defendant's answer, which alleges
that the machines made and sold after July 1, 1886, were not
covered by Brown's patent and did *not* infringe it.　That averment
does not deprive the State court of its jurisdiction to try the ques-
tion whether the plaintiff is entitled to recover upon the contract
set forth in the complaint.　Nor would it have given a Federal
court jurisdiction of the action, if the action had been brought
there, and the like pleadings had been put in.　(*Hartell* v *Tilgh-
man*, 9 Otto, 547; *Albright* v. *Teas*, 16 id. 613; *Dale Tile Mfg.
Co.* v. *Hyatt*, 125 U. S. 46.)

"In the circumstances of the case, the only question raised
by the portion of the answer referred to, is one of comparison
between the machines made at the different periods above men-
tioned, and that comparison is material, not for the purpose of deter-
mining whether the defendant has infringed the plaintiff's patent,
but for the sole purpose of determining whether, since June, 1886,
the defendant, or his firm, has made and sold machines answering to
the description contained in the contract, and if so, how many.

"If that question takes the case out of the jurisdiction of the
court, it follows that the defendant, in every action brought in a
State court to recover royalties or other compensation agreed to be
paid for the use of a patent right, may oust the court of jurisdiction
by interposing a defense like the one in question, and if he is then
sued by the plaintiff in a Federal court for the same cause, he may
procure there a dismissal of the complaint for want of jurisdiction
in that court, by omitting to set up such defense in his answer.

"In *Hyatt* v. *Ingalls* (124 N. Y. 93) it was contended that a
reissue of a patent, under which the plaintiff claimed, was void for
the reason that it embraced claims not included in a former reissue,
and omitted claims which were in the latter, and it was also con-
tended that the issue thus made was not within the jurisdiction of
the State court (p. 102), but the contention did not prevail, the court
holding that it was matter of comparative construction of the two
reissues, and although the last reissue was broader than the first, it
embraced the claims represented by the former reissue substantially,
and with a sufficient distinctness to preserve them within the prin-
ciple that the reissue of letters patent, embracing more than did
those surrendered, will be deemed invalid as to the excess, or new

claims only, and the State court had jurisdiction (p. 103). So here, the matter is one of comparison of the two machines, and they being substantially alike, no question arises which the State court cannot determine.

"The defendant's counsel argues that the principle of the Brown patent had been in public use before his patent was issued, and, therefore, the patent is worthless. The defendant, or his firm, in whose place he now stands, having entered into the contract with Brown, and having taken from him a license to make and sell the subject of the patent, cannot, for the purpose of a defense to an action to recover the royalties, question the validity of the patent. (*Marston* v. *Swett*, 66 N. Y. 206; S. C. on 2d appeal, 82 id. 527; *Hyatt* v. *Dale Tile Manfg. Co.*, 106 id. 651.)

"The defendant, having assumed the liabilities of his firm, on its dissolution, is liable for royalties on the machines made by the firm, as well as on those made by himself, since June, 1886.

"The assignment made by Dunning, as the general assignee of Brown to the plaintiff, carried the claim sought to be recovered herein.

"If the views above expressed are correct, the plaintiff is entitled to recover.

"There is evidence tending to show that the defendant and his firm have made and sold 6,347 machines since June, 1886, upon which no royalty has been paid. The royalty upon them, at the rate fixed by the contract — three dollars fifty cents per dozen — amounts to $1,851.50. It appears that forty-eight machines, sold in July, 1886, were manufactured previously, and the royalties on them were paid.

"The plaintiff's counsel claims interest on the amount due, but interest is not demanded in the complaint, and as it appears that no demand was made for payment or for a report of sales until about the time of the commencement of the suit, I think no interest should be allowed."

It follows that the judgment appealed from should be affirmed, with costs.

Dwight, P. J., Lewis and Haight, JJ., concurred.

Judgment appealed from affirmed, with costs.