AMERICAN SPECIALTY STAMPING CO. v. NEW ENGLAND ENAMEL-
ING CO.

(Circuit Court of Appeals, Second Circuit.   February 8, 1910.)

No. 214.

1. PATENTS (§ 312*)—INFRINGEMENT—SUFFICIENCY OF EVIDENCE.
   Where a defendant, which admittedly made and sold an article which
   infringed a patent, of which, however, it had no knowledge, made an
   agreement with the patentee conceding the validity of the patent and
   agreeing to discontinue the manufacture and sale of the infringing article,
   the fact that it retained in its circulars cuts apparently representing such
   article is not alone sufficient to establish subsequent infringement.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 549; Dec. Dig. §
   312.*]

2. PATENTS (§ 283*)—SUIT FOR INFRINGEMENT—DEFENSES—ESTOPPEL BY CON-
   TRACT—CONSTRUCTION OF PATENT.
   An agreement by which a defendant conceded the validity of com-
   plainant's patent and agreed to discontinue the manufacture and sale of
   an infringing article, in consideration of the waiver of all claims for
   past infringement, while it estops defendant, when sued for infringement
   by a different article, from denying the validity of the patent or a con-
   struction of the claims covering the article previously made, does not
   preclude it from denying infringement by the new article; and in con-
   sidering that question the court may look into the prior art and construe
   the specification in the light of the file wrapper, in order to determine
   whether the new article infringes.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448-452; Dec.
   Dig. § 283.*]

3. PATENTS (§ 167*)—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
   In construing the claims of a patent, whether or not the phrase "sub-
   stantially as described" is repeated in each one, the first, and generally
   the best, source of information is the specification.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. §
   167.*]

4. PATENTS (§ 328*)—INFRINGEMENT—COOKING UTENSIL.
   The Obermann patent, No. 507,281, for a cooking utensil, construed, and
   the evidence of infringement held insufficient to warrant the granting of
   a preliminary injunction.

Appeal from the Circuit Court of the United States for the South-
ern District of New York.

Suit in equity by the American Specialty Stamping Company against
the New England Enameling Company. From an order granting a
preliminary injunction, defendant appeals.   Reversed.

Steinhardt & Goldman (Robert N. Kenyon and Walter F. Rogers, of
counsel), for appellant.

Arthur von Briesen, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge.   Prior to April 30, 1906, defendant was
manufacturing and selling a kettle, apparently a Chinese copy of the
device of the patent.   It is contended, and not disputed, that at that
time defendant did not know of the patent.   Being called upon to
desist, it entered into an agreement with complainant whereby the lat-
ter waived all claims for past infringements and defendant conceded

the validity of the patent and agreed to discontinue, from the date of the agreement, the manufacture and sales of kettles covered by the patent. We find in the record no satisfactory evidence that since April 30, 1906, it has manufactured or sold any kettles exactly like those which it then conceded to be infringements of a valid patent. The utmost that the evidence seems to establish is that the illustrations which defendant issues with its circulars to the trade are so drawn as to indicate kettles of both types. It is thought that complainant must show more than this to make out infringement subsequent to 1906. If defendant really is selling the old type of kettle under these advertisements, it should not be difficult to show that fact. It has made and sold kettles of a somewhat different type, and contends that these are not infringements.

While defendant may not dispute the validity of the patent, nor such a construction of its claims as will cover kettles of the type it first made, it may show, if it can, that those of the later type are not within the patent; and in considering this question the court may look into the prior art and construe the specifications in the light of the file wrapper, in order to determine whether the new style of kettle also infringes the patent.

The patent is a simple one, for an improvement on five prior patents to Obermann, and deals with the cover of a kettle. The differences between the two types above referred to are these: In the earlier type the cover, which has a flange that rests on the kettle, is movable towards and from the spout—its diameter relative to that of the kettle being such as to permit a sliding movement—and, when it is desired, is thus slid backward by an operating handle, and locked by such handle at the close of the backward movement. In the later type the operating handle merely pinches or locks the cover to the kettle in situ, without imparting to the cover any prior backward movement.

The three claims relied upon are:

"1. The combination of a vessel having a spout in its upper edge, a cover for said vessel provided with an extension which serves as a cover for the spout and having a peripheral flange bent upward and outward extending over the upper edge of the vessel, and an operating handle pivotally secured on side the vessel and provided with a hook-like portion which is adapted for engaging the flange of the cover, all parts operating substantially as described.

"2. The combination of a vessel having an open top spout and an aperture E, a cover for the vessel having at one edge a projection which serves as a cover for the spout and provided with a peripheral flange bent upward and outward and extending over the upper edge of the vessel, and an operating handle pivoted to the outer upper side of the vessel opposite the spout and provided with a hooked portion which is adapted for engaging the flange of the cover, substantially as described.

"3. The combination of a vessel having an open top spout at its upper edge, a closely fitting cover for said vessel having at one edge an extension which serves as a cover for the spout and provided with a peripheral flange bent upward and outward and extending over the upper edge of the vessel, and the locking handle pivoted to the outer side of the vessel opposite the spout, and provided with a hooked portion which is adapted to pass over the flange of the cover, the distance from the tip of the spout cover to the edge of the vessel cover, which is opposite thereto, being less than the distance from the tip of the spout to the upper edge of the vessel, which is opposite."

In construing claims, whether or not the phrase "substantially as described" is repeated in each one, the first, and generally the best, source of information is the specifications. In this case no change was

made in the description of the patented improvement while the application was pending in the Patent Office. It states that the invention has for its object to produce a cooking vessel of such construction that the water can be drained from the article being cooked and steam allowed to escape without the necessity of lifting the cover from the vessel, and that it consists in the "novel arrangement and combination of parts more fully hereinafter described and specifically pointed out in the claims." After describing a "perforated steamer," claims for which were subsequently withdrawn, it proceeds:

"This invention still further consists in the novel construction of the operating handle for the purpose of opening and closing the lid or cover; furthermore the invention consists in the employment of suitable means to hold said cover in position. * * * Fig. 2 is vertical sectional view showing the cover in a closed position over the vessel. Fig. 3 is a vertical sectional view showing the cover drawn back and the vessel open sufficiently to allow draining and the escape of steam. Fig. 4 is a top plan [corresponding to Fig. 2]. Fig. 5 is a top plan corresponding to Fig. 3. Fig. 6 is a detail perspective view of the operating handle."

It is sufficient to reproduce Figs. 4 and 5, which show very clearly the combination of parts; B being the cover, with its annular flange, a, and D the operating handle.

The inventor next describes the operation of his device. After a reference to the so-called "steamer" he proceeds:

"When it becomes necessary to drain the water from the vessel the operator lifts the vessel by the handle with left hand, which leaves the right free to manipulate the handle which engages with the cover and draws it back a sufficient distance to allow water and steam to escape; and in this connection particular attention is called to the operating handle which is so formed as to engage in its operation with the flanged portion of the lid or cover and thereby withdrawing its projecting portion from over the spout a sufficient distance to allow the water to drain and steam to escape as shown in Figs. 3 and 5 of the drawings. * * * The rim on top of the vessel is so formed as to coincide with that of the lid or cover. It is so constructed, however, as to allow enough room or play as to effectually operate as heretofore described."

The application as filed contained six claims. Nos. 3 and 4 related to the "steamer," and were promptly rejected, and rejection acquiesced in. Nos. 1, 2, and 6 enumerated the "steamer," and were rejected, and thereafter modified, so as to eliminate that element. No. 5, which was merely for "operating handle, D, pivoted at d," was rejected on prior English patent to the same inventor. Four claims were then submitted, which contained no reference to a "steamer." No. 2 reads:

"In a cooking vessel having a spout, a lid completely covering said vessel and spout to close the same, and an operating handle engaging said lid to effect a forward or backward movement of the same to open and close said spout, substantially as described."

In the other three proposed claims this movement of the cover by the operating handle is set forth.

In reply the Office wrote:

"The examiner is unable to see how the operating handle draws the cover from over the spout, since from the drawings it appears to merely bind the cover to the vessel."

The examiner's investigation of the application must have been very superficial, because the drawings quite clearly show just how the operating handle draws the cover from over the spout. Replying to this inquiry applicant wrote:

"The backward movement of the lid is effected through oppositely arranged inclines of the annular projecting flange of the lid and of the operating handle."

Despite this statement of what seems to be self-evident on inspection of the original application and drawings, the examiner again wrote that:

"The alleged operation is so far from a reasonable one that a model is necessary to an understanding of the invention."

The model was duly filed. Thereafter, in criticism of the claims then pending before him, all of which referred to the backward movement of the lid by the operating handle, the examiner wrote that they "are drawn to cover merely the capabilities of the device." This was more legitimate criticism, although as to some of the claims then before him it seems rather overstrained. He added that in his opinion the real point which the applicant was seeking to cover would be brought out by a claim which he suggested, and which is identical with claim 3 of the patent as issued, adding that such a claim would probably receive favorable consideration, and "is held to cover all the patentable novelty in the case." Inasmuch as throughout the specification this movement of the lid is made the one prominent feature, as indicated in the drawings, was explained in applicant's letter as to "oppositely arranged inclines," and—if the model conformed to the specifications—was practically embodied therein, it cannot be supposed that even the examiner could then suppose that the "real point" which applicant was "seeking to cover" was a locking handle which merely held the cover in place without operating at all to shift its position. The latter part of this proposed claim, as to the relative longitudinal diameters of cover and kettle, indicates that it was contemplated that there should, in the language of the specifications, be "room or play to effectually operate as heretofore described." Moreover the examiner had before him Obermann's prior patent, No. 334,459, referred to in applicant's specification, which showed a "handle provided with a hook, the whole being suitably pivoted upon the vessel and so arranged that the hook will overlap the edge of the cover when turned to the position shown in dotted lines Fig. 2." This hook has a straight finger. The one of the patent in suit is curved; but certainly there could be no patentable invention in this mere change of form, unless it accomplished some

useful result, and the only result hinted at is the effecting of a backward movement of the cover before it is locked in place.

The applicant accepted the awkwardly drawn claim which the examiner offered him, and from the other two claims, which at the end he had pending, eliminated the words "to effect a backward movement of the cover," which the examiner had criticised as "attempting to claim the apparatus, by referring to its capabilities, instead of its construction," and the three claims issued as set forth supra. But in view of the specifications, which remained unchanged from first to last, we cannot hold that the action of the Patent Office so broadens these claims as to warrant a construction that would cover a type of operating handle which merely holds the cover in place, without first shifting it so as to allow the escape of water and steam.

The order is reversed, with costs, but without prejudice to a renewed application for injunction, should complainant be able hereafter to show the manufacture or sale by defendant of kettles similar to those manufactured before the agreement of April 30, 1906.