## H. D. SMITH & CO. v. SOUTHINGTON MFG. CO.

(District Court, D. Connecticut. July 26, 1916.)

No. 1431.

1. PATENTS ⬥283(1)—AGREEMENTS—ESTOPPEL.

Where defendant, having been threatened with an infringement suit, agreed to destroy all machinery used in the construction of those portions of the tool which were claimed to be an infringement, to deliver up all tools on hand, to respect the validity of the patent, and to thereafter avoid all infringements, such agreement as between the parties established the validity of the patent and the prior infringement, but does not prevent defendant from showing that tools subsequently constructed, differing from the original ones, did not infringe the patent, and for that purpose

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendant may show the prior art as limiting the scope of complainant's patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. ☞283(1).]

2. PATENTS ☞272, 311—INFRINGEMENT SUITS—PRIOR ART.

In an infringement suit, proof of the state of the prior art to aid in the construction of the patent is admissible in equity cases without any averment in the answer touching the subject, and in actions at law without the giving of the notice required when evidence is offered to invalidate a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 417, 541, 542; Dec. Dig. ☞272, 311.]

3. EVIDENCE ☞5(1)—JUDICIAL NOTICE—MATTERS OF COMMON KNOWLEDGE.

The court is bound to take judicial notice of matters of common knowledge.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. ☞5(1); Patents, Cent. Dig. § 543.]

4. PATENTS ☞168(2)—CLAIMS—SURRENDER.

Where a patentee did not appeal from the decision of the examiner rejecting his claims, but filed new and more restricted claims, he is, regardless of the propriety of the examiner's decision, presumed to have dedicated to the public all claims withdrawn.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. ☞168(2).]

5. PATENTS ☞328—CONSTRUCTION—INFRINGEMENT.

Patent No. 737,179, for an improvement in screw-drivers, held, in view of the proceedings in the Patent Office and the prior state of the art, to be limited to the conoidal shape of the bolster and lower part of the handle, and, as limited, not to be infringed.

6. PATENTS ☞316—INFRINGEMENT SUITS—RELIEF—UNFAIR COMPETITION.

In a suit for infringement of a patent, no relief for unfair competition, in that defendant dressed its goods so as to palm them off on the public as those of complainant, can be granted.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 562; Dec. Dig. ☞316.]

In Equity. Suit by the H. D. Smith & Co. against the Southington Manufacturing Company. Bill dismissed without prejudice to suit for other infringement.

Samuel H. Fisher and H. E. Rockwell, both of New Haven, Conn., for plaintiff.

George D. Seymour, of New Haven, Conn., for defendant.

THOMAS, District Judge. The plaintiff is the owner of letters patent No. 737,179, granted August 25, 1903, upon the application of William S. Ward, plaintiff's assignor, for an improvement in screw-drivers. The patent contains two claims, and the bill of complaint charges the defendant with infringement of both claims. An answer has been filed denying infringement, and the case arises upon final hearing on the pleadings and proofs.

[1] Prior to October 7, 1912, the defendant had made a Chinese copy of the device of the patent. Suit for infringement was threatened by the plaintiff and thereupon on said date the plaintiff and the defendant entered into an agreement whereby the defendant agreed

to destroy all dies used in the construction of the parts of the screw-drivers which were claimed by the plaintiff to be an infringement of the patent, to deliver up to the plaintiff all such screw-drivers then on hand, to respect the validity of the patent, and thereafter to avoid any and all infringements, direct or indirect, either by the manufacture of screw-drivers of the forms particularly involved or otherwise. The defendant then proceeded to manufacture and sell another screw-driver which it now alleges does not infringe the patent. The effect of this agreement is such that the validity of the patent and the fact of infringement prior to the date of the agreement, including such a construction of the claims as would include the article previously made, are no longer in issue between the parties. But this estoppel does not prevent the defendant from showing that the screw-drivers made since the date of the agreement (assuming that they differ from those made before) do not infringe the patent. For the purpose of showing that the new article does not infringe, the defendant is at liberty to prove the prior art and the proceedings in the Patent Office while the application was there pending. This view is directly supported by the decision of the Circuit Court of Appeals for this circuit in American Specialty Co. v. New England Enameling Co., 176 Fed. 557, 558, 100 C. C. A. 193, 194, which, in its controlling features, is the counterpart of the case at bar. There the defendant in an infringement suit had, prior to the suit, entered into an agreement with the plaintiff conceding the validity of the patent and agreeing not to infringe it in the future. The Circuit Court granted the plaintiff a preliminary injunction, which on appeal was reversed, the defendant contending that the new article was of a somewhat different type from the article included in the agreement, and therefore not an infringement. The judgment of the Circuit Court of Appeals granting a reversal was delivered by Judge Lacombe, who, in the course of the opinion, said:

"While defendant may not dispute the validity of the patent, nor such a construction of its claims as will cover kettles of the type it first made, it may show, if it can, that those of the later type are not within the patent; and in considering this question the court may look into the prior art and construe the specifications in the light of the file wrapper, in order to determine whether the new style of kettle also infringes the patent."

Such again is Noonan v. Chester Park Athletic Club Co., 99 Fed. 90, 91, 39 C. C. A. 426, 427, decided by the Circuit Court of Appeals for the Sixth Circuit (Taft, Lurton, and Day, Judges) where it was held that an estoppel preventing a defendant from denying the validity of the patent did not prevent him from denying infringement, and that in determining such an issue it is admissible to show the state of the prior art involved that the court may find what the thing was which was included in the estoppel, and thus determine the primary or secondary character of the patent, and the extent to which the doctrine of equivalents may be invoked against an infringer. The estoppel in that case arose from an assignment of the patent in suit, and the court in its opinion said:

"It seems to be well settled that the assignor of a patent is estopped from saying his patent is void for want of novelty or utility, or because anticipated

by prior inventions. But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger. Babcock v. Clarkson, 63 Fed. 607, 11 C. C. A. 351; Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 58 Fed. 818, 7 C. C. A. 498; Cash-Carrier Co. v. Martin, 67 Fed. 786, 14 C. C. A. 642; Chambers v. Crichley, 33 Beav. 374; Construction Co. v. Stromberg (C. C.) 66 Fed. 550; Clark v. Adie, 2 App. Cas. 423, 426."

[2] These authorities are directly in line with the well-established rule that proof of the state of the art is admissible in equity cases without any averment in the answer touching the subject, and in actions at law without giving the notice required when evidence is offered to invalidate the patent, for the purpose of aiding the court in the construction of the patent. Dunbar v. Meyers, 94 U. S. 187, 198, 24 L. Ed. 34.

[3-5] We are therefore brought to the vital question here involved, Is the difference between the new screw-driver and the old screw-driver made by the defendant such as to take the case out of the claims and thus enable the defendant to escape the charge of infringement? These claims are as follows:

"1. As a new article of manufacture, the herein-described screw-driver, consisting of the blade, the round shank, conoidal bolster, handle-web, and butt, all formed in one piece, and the handle-scales secured to the said handle-web, the handle portion being elliptical in cross-section for the most part, but gradually merging with the conoidal bolster by a gentle taper into the circular tool-shank, thus providing for a firm grasp while facilitating a nice control by pressure of the finger and thumb upon the shank of the tool.

"2. As a new article of manufacture, the herein-described screw-driver, consisting of the blade, the round shank, conoidal bolster, handle-web, and butt all formed in one piece of drop-forged metal shaped as described, the handle portion being elliptical in cross-section for the most part, but gradually merging with the conoidal bolster by a gentle taper into the circular tool-shank, thus providing for a firm grasp while facilitating a nice control by pressure of the finger and thumb upon the shank of the tool."

In construing these claims and determining the question of their construction and just what they cover, the best source of information is the specification of the patent, and, in connection therewith, the history of the application while it was pending in the Patent Office. The patent is a very simple one. The patentee first states that the object of his invention "is efficiency of the article." He then proceeds to describe its mechanical construction by reference to the accompanying drawings, after which he states that:

"The screw-driver is very firm, substantial, and solid, while at the same time it is of a graceful and effective form and particularly convenient to handle."

From the prior art which is introduced in evidence, and from matters of common knowledge and use which the court is bound to judi-

cially notice (Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200; King v. Gallum, 109 U. S. 99, 3 Sup. Ct. 85, 27 L. Ed. 870), it appears that various kinds of cutlery and utensils used by hand had scale handles in which the blade, the shank, the handle-web, and the butt were all formed in one piece, and the handle-scales were secured to the handle-web. Such general construction is shown in the Rubel patent, No. 86,252, of January 26, 1869, the Rubel patent, No. 78,328 of May 26, 1868, and the Frary patent, No. 172,874 of February 1, 1876, all of which preceded, by a considerable time, the application for the patent in suit. The prior art also shows high-class wrenches of the same construction with handle-web and wrench-bar made of a single drop forging.

The original application for the patent in suit as filed contained only one claim covering these devices, which was as follows:

"As a new article of manufacture, the herein-described screw-driver, consisting of the blade, shank, conoidal bolster, handle-web, and butt all formed in one piece, and the handle-scales secured to the said handle-web."

This claim was promptly rejected on the ground that the applicant's device presented a mere double use of the structure shown in the Rubel patent, No. 86,252, the Rubel patent, No. 78,328, and the Frary patent, No. 172,874. This rejection was acquiesced in, and the claim amended by characterizing the word "shank" by the adjective "round," and by inserting an additional claim as follows:

"The herein-described screw-driver, consisting of the blade, shank, bolster, handle-web and butt, all formed in one piece with the hammer face 12 at the extreme end of the butt, and the handle-scales secured to the said web"

—the applicant at the same time stating that:

"The amended claims are thought to avoid the references, because none of the references show either the round shank, the conoidal bolster, nor the butt with the hammer face."

These amended claims were again promptly rejected because they did not present any invention over the references of record, and this rejection was acquiesced in.

The applicant thereupon amended his specification by substituting for the word "shoulder" the word "face" as it now appears in lines 31, 32, 35, and 37 of page 1 of the printed specification, and by adding the word "drop" before the word "forged," as it now appears in line 42 of page 1 of the printed specification, and by inserting further the following:

"I deem the conoidal shape of the bolster and lower part of the handle, merging from an elliptical cross-section into the circular one of the blade-shank by a gentle taper without any shoulder or abrupt break, as important because it permits the operator, while maintaining a firm grip upon the main portion of the handle, to bring his finger and thumb down upon the bit-shank to control the point of the blade with great nicety. I also deem as important the particular form of the handle-scale-receiving faces of the bolster and butt of the metal part of the tool, which are readily manufactured by drop-forging"

—and further by inserting after the last line of claim 1, the following:

"The handle portion being elliptical in cross-section for the most part, but gradually merging with the conoidal bolster by a gentle taper into the circular

tool shank, thus providing for a firm grasp while facilitating a nice control by pressure of the finger and thumb upon the shank of the tool"

—and by striking out claim 2 and substituting therefor the second claim as allowed.

The patent was then allowed with these amendments after the patentee had an opportunity to appeal from the decision of the examiner rejecting his application. No appeal was taken. He must therefore be held to have surrendered to the public what he thus conceded, and it is immaterial whether the examiner was right or wrong in making the rejection. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 Sup. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 598, 6 Sup. Ct. 493, 29 L. Ed. 723; Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 33 L. Ed. 382; Knapp v. Morss, 150 U. S. 221, 224, 14 Sup. Ct. 81, 37 L. Ed. 1059; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500. These amendments to the specification and claims, and the amended claims, must be construed with reference to the specification, and were manifestly a narrowing of the patent and its claim as originally applied for, and this narrowing of the claim was accepted by the patentee as a condition precedent to the grant of the patent. The claims as allowed cannot, by any possibility, be construed to cover what was previously rejected, and this is particularly true as the patent in suit is of a narrow character of invention which does not entitle the patent to any considerable range of equivalents, but must be strictly construed and limited. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 621, 27 Sup. Ct. 307, 51 L. Ed. 645.

It follows therefore that the defendant does not infringe unless its alleged infringing device contains those elements or characteristics which were injected into the patent in suit as a condition precedent of the grant. In my opinion, the defendant's device does not contain these elements or characteristics. To be sure, the difference is very slight, but slight as it is, it was sufficient to convince the Patent Office that the patent should be allowed, and if it was sufficient for the latter purpose, it must be sufficient to escape the charge of infringement. The patent was not allowed until the conoidal bolster had been characterized as to shape and function, and this feature now becomes the prime feature of the patent, and, with respect of patentable novelty, it is the exclusive feature; indeed, it was so recognized by the Patent Office as differentiating applicant's device from the table knives of the prior art. Moreover, the "gentle taper" of the bolster "without any shoulder or abrupt break" is permissive and not positive. The real fact is that the ultimate control of the blade is not effected through the bolster, but through the bit shank which is circular in cross-section. With his finger and thumb stretched over the smooth taper of the bolster the operator can reach down over the same upon the bit shank and thus effect the control of the blade. But the patentee abandoned to the public by his failure to appeal from the examiner his original broad claim covering a screw-driver having its metal portion made in one piece and provided with handle-scales, and accepted a patent with a limitation restricting his monopoly to a screw-driver possessing cer-

tain alleged functional advantages proceeding from a carefully defined form. Even if the theory upon which the patent was granted was chimerical and imaginative, the patentee is as much bound by it as though supported by a sound distinction, and if sufficient to justify the issuance of the patent, it must be sufficient now to show what was old and to distinguish what is new, and thus to aid the court in the construction of the patent. My conclusion therefore is that, as the defendant does not use the conoidal shape of the bolster and the round shank as set forth fully in the amendment to the specification and definitely described in the claims as allowed, it does not infringe.

[6] Plaintiff's counsel has called attention to apparently · unfair devices in the way of get-up, dress, etc., from which it is suggested that defendant is seeking to deceive the public into a belief that its screw-drivers are those of the plaintiff. This inquiry is not open in this case, as the plaintiff must stand or fall upon its patent rights exclusively. New Departure Mfg. Co. v. Sargent & Co., 127 Fed. 152, 155, 62 C. C. A. 266.

The bill of complaint is dismissed, without prejudice, however, to the plaintiff's right to maintain a suit against the defendant if it can show the manufacture or sale by defendant of screw-drivers the same as those manufactured before the agreement of October 7, 1912.

Let a decree to that effect be entered.