### DALE TILE MANUFACTURING COMPANY *v.* HYATT.

ERROR TO THE CITY COURT OF NEW YORK.

No. 1232. Submitted January 9, 1888. — Decided March 19, 1888.

An action upon an agreement in writing, by which, in consideration of a license from the patentee to make and sell the invention, the licensee acknowledges the validity of the patent, stipulates that the patentee may obtain reissues thereof, and promises to pay certain royalties so long as the

patent shall not have been adjudged invalid, is not a case arising under the patent laws of the United States, and is within the jurisdiction of the State courts; and the correctness of a decision of the highest court of a State upon the merits of the case, based upon the effect of the agreement, without passing upon the validity of a reissue, or any other question under those laws, cannot be reviewed by this court on writ of error.

THE original action was brought in a court of the State of New York by Elizabeth A. L. Hyatt, a citizen of New York, and the owner of letters patent for an improvement in illuminated basement and basement-extensions, against the Dale Tile Manufacturing Company (Limited), a corporation organized by the laws of New York, upon a written agreement between the parties, dated December 28, 1880, which contained, either in itself, or by reference to previous agreements, the following provisions:

The agreement began by reciting that letters patent for this invention had been issued to the plaintiff on August 27, 1867, and reissued on August 6, 1878. The plaintiff, on her part, licensed the defendant to make and sell, within certain states and districts, during the full term of the patent, and of any extension or renewal thereof, illuminated basements, and basement-extensions and materials therefor; and agreed not to manufacture herself, or to license others to manufacture, within the same territory. The defendant, on its part, acknowledged the validity of the said letters patent; consented that the plaintiff might obtain further reissues thereof when and as often as she should choose, without prejudice to this agreement; and promised to pay her a fee of seventy cents for each square foot of surface in gratings made by the defendant to be used in illuminated basements or basement-extensions made and sold by it under the license; provided, however, that "until a court shall have given a decree sustaining the validity of the above-named patents," the plaintiff should receive a fee of thirty cents only, in lieu of the fee of seventy cents; and that "if at any time an adverse decision shall be rendered against the validity of the patent, which shall not be appealed from for three months," the fees under this

license should cease; and the defendant agreed to make such payments and render accounts to' the plaintiff quarterly. It was further stipulated that either party, knowingly violating the agreement, should forfeit all rights under it.

The defendant, in its answer, admitted the agreement, and set up sundry breaches thereof by the plaintiff, and, among others, that on September 27, 1881, she obtained from the United States a reissue of her patent, whereby a discontinuance of actions previously brought by her against infringers in the Circuit Court of the United States became necessary, and she refused to bring new suits against them.

The plaintiff afterwards, by leave of court, amended her complaint by alleging the reissue of 1881.

By order of the City Court of New York, the case was referred to a referee, who found that the plaintiff was the owner of the letters patent issued and twice reissued as aforesaid; that there had been no breach of the agreement on her part; that the defendant made and sold the invention under the license, and rendered quarterly accounts for the royalties down to and including the quarter ending October 31, 1881; that by the account for that quarter there appeared to be due to the plaintiff the sum of $524.55, which the defendant refused to pay; and that in December, 1881, the plaintiff gave notice to the defendant that it had forfeited its license, and withdrew the notice upon its promising to pay the royalties.

The defendant requested the referee to find, as a conclusion of law, that by the plaintiff's surrender of the patent, on taking out the reissue of 1881, the license held by the defendant was cancelled and became of no effect; and also that the court had no jurisdiction of the action, because it involved necessarily and directly the construction of letters patent of the United States. The referee declined so to find, and reported, as his conclusion of law, that the plaintiff was entitled to judgment against the defendant for the sum of $524.55, with interest from November 1, 1881.

The referee filed with his report an opinion, in which he said that the defence, at first, proceeded upon the theory that the plaintiff had violated her agreement by not prosecuting

and restraining infringers, but that defence was abandoned, because it appeared that she had assumed no such duty ; and that "the defence was finally rested upon this sole ground : That the reissue of the patent in 1881 was entirely void, because it covered much more ground than the patent of 1867 as reissued in 1878, and that therefore the surrender of 1878 left no patent whatever existing ;" but that the defendant was not in a position to raise this question, because it could not, in this action to recover the royalties agreed upon, deny the validity of the original patent or of any reissue thereof, so long as it had not been declared void by a court of competent jurisdiction, and while the defendant retained and acted under its license from the plaintiff.

The City Court of New York gave judgment for the plaintiff on the referee's report.  That judgment was affirmed by the Court of Common Pleas, and the defendant appealed to the Court of Appeals, which affirmed the judgment, and remitted the case to the City Court of New York.  The opinion filed by the Court of Appeals, and included in the transcript sent up to this court, is mentioned, but not reported in full, in 106 N. Y. 651, and is copied in the margin.[1]

---

[1] PECKHAM, J.  We think this case is controlled by that of *Marston* v. *Swett*, reported upon two appeals to this court.  See 66 N. Y. 206 ; 82 N. Y. 526.

The general and material features of the two cases are similar.  In both there was an agreement on the part of the plaintiff to refrain from manufacturing, in consideration, among other things, of the promise of the defendant to pay the royalties.  While continuing the manufacture under the license, the defendant ought not to escape liability to pay the royalties.

The defendant's counsel, it is true, seeks to distinguish this case from *Marston* v. *Swett*, *supra*, because, as he says, since the reissue of the patent in 1881, which he insists was wholly void, the defendant has no protection from the manufacture by others, for the reason that by the surrender of the patent of 1878 and the reissue of 1881 there was no valid patent in existence, and the consideration for the promise to pay royalties had therefore wholly failed.

There was consideration enough for the promise to pay such royalties, in that the plaintiff bound herself not to manufacture, and because the defendant could not be called to account as an alleged infringer while manufacturing under the license.

If it were a question of the validity of the reissue of 1881, and a

The defendant sued out this writ of error; and assigned for error, that the State courts, both of original and of appellate

decision of that question were necessary to the decision of this case, the defendant is, of course, correct in his claim that a state court has no jurisdiction to determine such an issue; but within the decision of the *Marston case* no such question arises. The defendant has protection enough to base its promise to pay royalty upon, as long as it so conducts itself towards the plaintiff as to prevent her from treating it as an infringer. In other words, so long as the defendant continues to manufacture under its license (the patent not having been legally annulled), and thus elects to treat the agreement as in existence, it prevents the plaintiff from treating the defendant in any other light than that of a licensee. If the defendant desired to repudiate any obligation under this agreement, it should have given notice to the plaintiff that it refused to longer recognize its binding force, and that it would thereafter manufacture under a claim of right founded upon the alleged invalidity of the patent. Otherwise, the defendant in claiming to manufacture under the license and refusing to pay the royalties thereunder would, if successful, prevent the plaintiff from recovering anything from it. She could not treat the defendant as an infringer, because it was manufacturing under a license from her; and she could not collect the royalties under the license (although herself refraining from manufacturing, as she had agreed), because the defendant would allege the invalidity of the patent, although continuing to manufacture under cover of a license from its owner. Such doctrine cannot stand a moment. Of course, as is said in the *Marston case*, from the time that the patent is annulled by proper legal proceedings no royalties could be collected, even though no notice of a repudiation of the agreement had been thereafter served.

There is another ground, upon which it seems to me this judgment might well rest. Under the clause in the agreement between the parties, which provided for a forfeiture of all rights thereunder if one party should wilfully violate one of its provisions, the plaintiff gave notice of such forfeiture to the defendant, based upon its refusal to pay the royalties which it had acknowledged to be due for the quarter ending October 31, 1881 (the very quarter in question here), an account of which it had rendered under the oath of its secretary, as provided for in such agreement. Subsequently to the service of such notice, the plaintiff withdrew the same at the request of the defendant and upon its promise to pay these very royalties which it had already acknowledged to be due. A failure to carry out such promise gives, as it seems to me, a good cause of action.

The defendant says, there was no consideration for such a promise, because there was no patent upon which to ground a license, and the defendant therefore had no license and no protection; but the plaintiff of course contended that the reissued patent was valid, and at the request of the defendant the plaintiff withdrew her notice of forfeiture of the license, and thus reinstated the defendant in its possession, and freed it from the liability to be proceeded against as an infringer and put to expense and

jurisdiction, had no power to entertain the issues in this action, because they involved directly and solely the validity of the letters patent reissued by the United States to the plaintiff on September 27, 1881. The defendant moved to dismiss the writ of error for want of jurisdiction, and also moved to affirm the judgment.

*Mr. George W. Van Slyck* for the motions.

*Mr. Edward D. McCarthy* opposing.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The defendant contended in the courts of New York that those courts had no jurisdiction, because the plaintiff's right to maintain her action depended upon the question whether the second reissue of her patent was valid or invalid under the patent laws of the United States, and that of that question the courts of the United States had exclusive jurisdiction. The judgments of each court of the State, holding that the question of the validity of that reissue could not be contested in this action, and assuming jurisdiction to render judgment against the defendant, necessarily involved a decision against the immunity claimed by the defendant under the Constitution and laws of the United States, which this court has jurisdiction to review.

The motion to dismiss must therefore be denied. But the decision was so clearly right, that the motion to affirm is granted.

The action was upon an agreement in writing, by which the plaintiff, as owner of letters patent, already once reissued, granted to the defendant an exclusive license to make and sell the patented articles within a certain territory, during the

---

inconvenience in the defence of such a litigation. This was saved at the request of the defendant, and upon its special promise to pay the royalties. Plainly here was a good and sufficient consideration for the defendant's promise.

    The judgment should be affirmed, with costs. All concur.

term of the patent and of any extension or renewal thereof; and the defendant expressly acknowledged the validity of the letters patent, and stipulated that the plaintiff might, without prejudice to this agreement, obtain further reissues, and promised to pay to the plaintiff certain royalties so long as no decision adverse to the validity of the patent should have been rendered.

The defendant contended that this was a case arising under the patent laws, of which the courts of the United States have exclusive jurisdiction. Rev. Stat. § 629, cl. 9; § 711, cl. 5. But it is clearly established by a series of decisions of this court, that an action upon such an agreement as that here sued on is not a case arising under the patent laws.

It has been decided that a bill in equity in the Circuit Court of the United States by the owner of letters patent, to enforce a contract for the use of the patent right, or to set aside such a contract because the defendant has not complied with its terms, is not within the acts of Congress, by which an appeal to this court is allowable in cases arising under the patent laws, without regard to the value of the matter in controversy. Act of July 4, 1836, c. 357, § 17, 5 Stat. 124; Rev. Stat. § 699; *Wilson* v. *Sandford*, 10 How. 99; *Brown* v. *Shannon*, 20 How. 55.

Following those decisions, it was directly adjudged in *Hartell* v. *Tilghman*, 99 U. S. 547, that a bill in equity by a patentee, alleging that the defendants had broken a contract by which they had agreed to pay him a certain royalty for the use of his invention and to take a license from him, and thereupon he forbade them to use it, and they disregarded the prohibition, and he filed this bill charging them as infringers, and praying for an injunction, an account of profits, and damages, was not a case arising under the patent laws, and therefore, the parties being citizens of the same State, not within the jurisdiction of the Circuit Court of the United States. And the judges who dissented from that conclusion admitted it to be perfectly well settled " that whe e a suit is brought on a contract of which a patent is the subject matter, either to enforce such contract, or to annul it, the case arises

on the contract, or out of the contract, and not under the patent laws." 99 U. S. 558.

In the still later case of *Albright* v. *Teas*, 106 U. S. 613, a patentee filed a bill in equity in a State court, setting up a contract by which he agreed to assign his patent to the defendants and they agreed to pay him certain royalties, and alleging that the defendants had refused to account for or pay such royalties to him, and had fraudulently excluded him from inspecting their books of account. The defendants answered that the plaintiff had been paid all the royalties to which he was entitled, and that, if he claimed more, it was because he insisted that goods made under another patent were an infringement of his. This court held that it was not a case arising under the Constitution or laws of the United States, removable as such into the Circuit Court under the act of March 3, 1875, c. 137, § 2. 18 Stat. 470.

It was said by Chief Justice Taney in *Wilson* v. *Sandford*, and repeated by the court in *Hartell* v. *Tilghman*, and in *Albright* v. *Teas*, "The dispute in this case does not arise under any act of Congress; nor does the decision depend upon the construction of any law in relation to patents. It arises out of the contract stated in the bill; and there is no act of Congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common law and equity principles." 10 How. 101, 102; 99 U. S. 552; 106 U. S. 619.

Those words are equally applicable to the present case, except that, as it is an action at law, the principles of equity have no bearing. This action, therefore, was within the jurisdiction, and, the parties being citizens of the same State, within the exclusive jurisdiction, of the State courts; and the only federal question in the case was rightly decided.

Upon the merits of the case, it follows from what has been already said, that no question is presented, of which this court, upon this writ of error, has jurisdiction. *Murdock* v. *Memphis*, 20 Wall. 590. The grounds of the judgment below appear in the opinion of the Court of Appeals, to which, under the existing acts of Congress, this court is at liberty to refer.

*Philadelphia Fire Association* v. *New York*, 119 U. S. 110; *Kreiger* v. *Shelby County Railroad, ante*, 43. Whether that court was right in its suggestion that it would have no jurisdiction to determine the validity of the second reissue if incidentally drawn in question in an action upon an agreement between the parties, we need not consider; inasmuch as it expressly declined to pass upon any such question, because it held that, in this action to recover royalties due under the agreement, the defendant, while continuing to enjoy the privileges of the license, was estopped to deny the validity of the patent, or of any reissue thereof. The decision was based upon the contract between the parties; and the court did not decide, nor was it necessary for the determination of the case that it should decide, any question depending on the construction or effect of the patent laws of the United States. *Kinsman* v. *Parkhurst*, 18 How. 289; *Brown* v. *Atwell*, 92 U. S. 327.

*Judgment affirmed.*