## NACHMAN SPRING–FILLED CORPORATION v. KAY MFG. CO.

No. 59.

Circuit Court of Appeals, Second Circuit.

Nov. 18, 1943.

FRANK, Circuit Judge.

█ Defendant, in its brief on appeal, argues that, if the patent is invalid, the agreement is void as in restraint of trade, and that therefore we must inquire into the validity of the patent. This contention was not made in the court below; but we do not reject it on that account, since Muncie Gear Co. v. Outboard Co., 315 U.S. 759, 766, 768, 62 S.Ct. 865, 870, 86 L.Ed. 1171, seems to us to hold that regard for "the public interest sought to be safeguarded by the patent statutes, and so frequently present but so seldom adequately represented in patent litigation" requires that an upper court should consider important defenses in such litigation even though not raised in the court below.[1]

In Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, the court (to the surprise of the patent bar generally) held that the so-called implied estoppel of a patent licensee, to question the validity of the patent under which he is licensed, is inoperative, even if the estoppel would otherwise be effective under federal or state law, when the license agreement contains a provision fixing prices, since such a provision, should the patent be not valid, will violate the Sherman Act, 15 U.S.C.A. §§ 1-7, 15 note. In American Cutting Alloys, Inc. v. General Electric Co., 2 Cir., 135 F.2d 502, 504-505, we recently applied the Sola doctrine where a license agreement contained both a price-fixing clause and an express covenant not to question the validity of the patent.

█ In the instant case, too, the covenant is express. But here we find it in an agreement, containing no price-fixing clause, which was made by one not a licensee or assignor. That the defendant is not a licensee or assignor may strengthen its defensive position, for reasons we shall note later. It is suggested, however, that the Sola doctrine is inapplicable to an agreement which unreasonably restrains competition but does not fix prices. We cannot agree. True, the court in the Sola case [317 U.S. 173, 63 S.Ct. 173, 87 L.Ed. 165] specifically referred to "the doctrine of

Edmund Quincy Moses, of New York City, and R. W. Lotz, of Chicago, Ill., for plaintiff-appellee.

John J. Sweedler, of New York City (Harry Jacobson, of New York City, of counsel), for defendant-appellant.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

[1] Also pertinent are cases holding that a court should sua sponte raise the question of the illegality of an agreement where the illegality is serious (especially where an important public interest is involved), and that the defense of illegality cannot ordinarily be waived. See, e. g., Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L.Ed. 539; Roberts v. Criss, 2 Cir., 266 F. 296, 302, 11 A.L.R. 698; Fitzsimmons v. Eagle Brewing Co., 3 Cir., 107 F.2d 712, 126 A.L.R. 681; Williston, Contracts (Rev. Ed.) § 1630a; Restatement of Contracts, § 600, comment.

estoppel" as being "in conflict with the Sherman Act's prohibition of price-fixing." But the rationale of the opinion is that there can be no valid estoppel to deny the validity of a patent if the estoppel will result in a contravention of federal anti-trust laws. The court concluded its opinion with the statement that "rules of estoppel which would fasten upon the public as well as the petitioner the burden of an agreement in violation of the Sherman Act must yield to the Act's declaration that such agreements are unlawful, and to the public policy of the Act which in the public interest precludes the enforcement of such unlawful agreements. Cf. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492, 493, 62 S.Ct. 402, 405, 86 L.Ed. 363." As that act renders unlawful not merely price-fixing agreements but all agreements which, in any way, unreasonably restrain competition in interstate commerce, the conclusion is inescapable that the Sola case doctrine applies to any such agreement. The citation in the Sola opinion of the Morton Salt case is significant; for, in the latter case, the court refused to enjoin infringement of a patent the owner of which, the plaintiff, was restraining competition not through price-fixing but by requiring its licensees (the defendant not being one of them) to buy non-patented articles from plaintiff.[1a] We are fully aware that our conclusion may gravely affect many patent licenses, that it may, in many instances remove one of the principal motives inducing the grant of a license. But we think that the logic of the Sola case compels that conclusion.

The agreement here is one by which defendant agreed with plaintiff, a competitor, to cease making and selling, throughout the United States and for thirteen years, a commodity which both parties had theretofore been making and selling. If, disregarding the patent, the effect of the agreement would be unreasonably to restrain competition,[1b] then only the validity of the patent can rescue the agreement from the jaws of the anti-trust laws. Accordingly defendant's covenant acknowledging the patent's validity constitutes, in effect, an undertaking that, if sued by plaintiff for enforcement of that agreement, defendant will not assert the defense that the agreement is illegal. Such a raising-by-one's-boot's-straps undertaking, of course, cannot be enforced.[2]

▆▆▆ In the Sola case, the court said that, in its earlier decisions concerning the estoppel of a patent licensee to contest the patent's validity, the rule of estoppel had been applied without discussion, and suggested that, absent a Sherman Act situation, the question may be one of state law.[3] This would seem to mean that such an

---

[1a] See, also, B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367.

[1b] In United States v. Socony Vacuum Oil Co., 310 U.S. 150, note 59, at page 226, 60 S.Ct. 811, at page 846, 84 L.Ed. 1129, the court distinguished between §§ 1 and 2 of the Sherman Act, noting that § 1, unlike § 2, relates to contracts and is not confined to monopolies.

[2] See note 1, supra; 66 C.J. 280; 17 C.J.S., Contracts, § 269; Cf. Williston, loc. cit., §§ 811, 1630a, 1751; Restatement of Contracts, §§ 572, 573; Arnold v. National Aniline & Chemical Co., 2 Cir., 20 F.2d 364, 56 A.L.R. 4; 12 Amer.Jur. 683.

[3] The court (317 U.S page 175, 63 S.Ct. page 173, 87 L.Ed. 165) said: "The circuit court of appeals, in holding that petitioner as a licensee was estopped to challenge the validity of the patent, did not say whether it considered that it was applying a rule of federal or of state law, and it cited no decisions of either the federal or the Illinois courts. Where no price-fixing stipulation was involved in the license contract, this rule of estoppel, which was not questioned by counsel, was applied without discussion in United States v. Harvey Steel Co., 196 U.S. 310, 25 S.Ct. 240, 49 L.Ed. 492; cf. Kinsman v. Parkhurst, 18 How. 289, 15 L.Ed. 385. We need not decide whether in such a case the rule is one of local law, cf. Dale Tile Mfg. Co. v. Hyatt, 125 U.S. 46, 53, 54, 8 S.Ct. 756, 758, 759, 31 L.Ed. 683, or whether, if it be regarded as a rule of federal law because the construction and application of the patent laws are involved, it was rightly applied in United States v. Harvey Steel Co., supra. For here a different question is presented—whether the doctrine of estoppel as invoked below is so in conflict with the Sherman Act's prohibition of price-fixing that this Court may resolve the question even though its conclusion be contrary to that of a state court."

Kinsman v. Parkhurst, 18 How. 289, 293, 294, 15 L.Ed. 385, involved, as the court there noted, a partnership agreement between joint owners of the patent.

Dale Mfg. Co. v. Hyatt, 125 U.S. 46, 8 S.Ct. 756, 31 L.Ed. 683, held that a decision of the highest court of a state, which had sustained an agreement by which a licensee acknowledged a patent's validity, did not involve a federal question so as to permit review by the United States Supreme Court on writ of error.

agreement as that before us is illegal, unless the patent is valid, if, regarding the agreement as one relating to an unpatented commodity, it would be illegal according to State law. By the common law of most jurisdictions, an agreement restricting competition is illegal unless it is "ancillary" to the sale of a business or the like.[3a] In the instant case, the agreement is not thus "ancillary." Accordingly, even if it does not violate the Sherman Act, it may, under the Sola doctrine, be unenforceable, unless the patent is valid.

The agreement here perhaps confronts another difficulty. In most of the cases, decided before Sola, which sustained an estoppel, whether implied or based on an express covenant, the estoppel ran against either an assignor of the patent or a licensee thereunder, and those decisions seemed to have relied on analogies of conveyances or leases of land.[4] But as here the defendant is neither an assignor nor a licensee, the patent-estoppel cases, even as they stood in pre-Sola days, may not be protective of the agreement, and, even assuming that the Sola doctrine is limited to price-fixing agreements, the agreement here may be illegal under the common-law rule as to contracts, not "ancillary," in restraint of trade.

In Pope Mfg. Co. v. Gormully, 144 U.S. 224, page 233, 12 S.Ct. 632, 636, 36 L.Ed. 414 (in a case to which the Sherman Act was inapplicable because the agreement before the court was made and the litigation began prior to the enactment of that statute), the court construed the agreement as one by which the defendant, in consideration of the grant to it by plaintiff of licenses under fifteen patents, agreed not to dispute the validity of or plaintiff's title to, and not to infringe, not only those but fifty other patents;[5] the plaintiff filed a bill seeking an injunction restraining defendant from breaching the agreement as to certain of those patents under which defendant was not licensed; the court affirmed a decree dismissing the bill. Stating that "the real question is whether the defendant can estop himself from disputing patents which may be wholly void, or to which the plaintiff may have no shadow of title," the court went on to hold that, on grounds of public policy, equity must refuse to give specific enforcement (by way of injunction) of such a contract because "it is important to the public that competition should not be repressed by worthless patents." It is true that the court referred to possible overreaching by plaintiff in the making of the contract, but it did not rest its decision on that ground.[6] True, too, the court described the contract as one "not to set up any defense whatever to any suit that may be begun upon 50 different causes of action"; so that it is arguable that the doctrine of that case has no relevance where, as here, the contract relates to but a single patent. Yet that is by no means clear. For the court discussed at length (pages 235, 236 of 144 U.S., page 636 of 12 S.Ct., 36 L.Ed.

---

[3a] That, if not thus "ancillary," such an agreement is illegal at common law, see, e. g., United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 282–284, 46 L.R.A. 122; Super-Maid Cookware Corp. v. Hamil, 5 Cir., 50 F.2d 830, certiorari denied 284 U.S. 677, 52 S.Ct. 138, 76 L.Ed. 572; Restatement of Contracts, §§ 515 (e) and 516; 17 C.J.S., Contracts, § 246, p. 629; 36 Amer.Juris. 530, 537; Handler, Cases and Other Materials on Trade Regulation (1937) 150ff; cf. Handler, A Study of The Construction and Enforcement of The Federal Antitrust Laws, Monograph No. 38, Temporary National Committee, Senate Committee Print, 76th Cong., 3d Sess. (1941) 6-7.

[4] See Westinghouse Electric & Mfg. Co. v. Formica Co., 266 U.S. 342, 350, 45 S.Ct. 117, 69 L.Ed. 316.

[5] See the opinion of the Circuit Court in that case, C.C.N.D.Ill., 34 F. 877, 885.

[6] The Circuit Court had indicated that there may have been overreaching by the plaintiff in inducing the defendant to sign the agreement, but concluded its opinion with the statement that "it ought not to be enforced in a court of equity, even if the defendant fully understood and comprehended the force and import of every paragraph of it."

The Supreme Court, referring to the evidence as over-reaching, said (144 U.S. at pages 237, 238, 12 S.Ct. at page 637, 36 L.Ed. 414): "While we are not satisfied that his assent * * * was obtained by any fraud or misrepresentation, or that the defendant should not be bound by it to the extent to which it is valid at law, we are clearly of the opinion that * * * plaintiff has no right to call upon a court of equity to give it the relief it has sought * * * in this suit."

On the same day the court, in infringement suits brought under several of the patents included in the agreement but under which defendant was not licensed, held some of those patents invalid. See 144 U. S. 238, 12 S.Ct. 637, 36 L.Ed. 419, and 144 U.S. 254, 12 S.Ct. 643, 36 L.Ed. 426.

414) cases holding that one may not legally in a contract agree not to avail himself of a defense, "secured to him on grounds of public policy," even as to a single cause of action arising under that contract.[7] Moreover, the court in the Pope Mfg. case, in stressing the public policy of preventing suppression of competition by "worthless patents," articulated an attitude recently voiced, in even more emphatic terms, by the Supreme Court as presently constituted, in Morton Salt v. Suppiger, supra, B. B. Chemical Co. v. Ellis, supra, and Muncie Gear Co. v. Outboard Co., supra. In Philadelphia Creamery Supply Co. v. Davis & Rankin Bldg. & M. Co., C.C.N.D.Ill., 77 F. 879, 881, the defendant, when granted a license under certain patents, agreed not to contest the validity of certain other patents; there was no suggestion of over-reaching, but the court, referring to the Pope Mfg. case, said, in a dictum, that such an agreement "would not possibly be enforceable," with respect to the patents under which the defendant was not licensed.[8]

In United Lens Corp. v. Doray Lamp Co., 7 Cir., 93 F.2d 969, the defendant, in connection with the grant to it of a license under one patent, agreed not to contest the validity of, and not to infringe, another patent;[9] suit was brought to restrain infringement of this latter patent and to enforce the agreement with respect thereto. The court, apparently recognizing the inapplicability of the patent-estoppel doctrine, held invalid the patent in suit, and then, regarding the contract as one to refrain from competition in making or selling an unpatented article, decided that it was not illegal, citing cases relating to "an-

[7] On this point, the court said, in part (pages 234, 235 of 144 U.S., page 636 of 12 S.Ct., 36 L.Ed. 414): "The Reports are not entirely barren of authority upon this subject. Thus in Crane v. French, 38 Miss. 503, [530, 532], it was held that though a party may omit to take advantage of a right, such as the right to plead the statute of limitations, secured to him by law, he could not bind himself by contract not to avail himself of such right if it be secured to him on grounds of public policy. 'But there appears to be,' says the court, 'a clear distinction between declining to take advantage of a privilege which the law allows to a party, and binding himself by contract that he will not avail himself of a right which the law has allowed to him on grounds of public policy. A man may decline to set up the defense of usury, or the statute of limitations, or failure of consideration to an action on a promissory note. But it would scarcly be contended that a stipulation inserted in such a note, that he would never set up such a defense, would debar him of the defense if he thought fit to make it. * * * Suppose, then, an agreement made by the maker of a note that he would not set up the defense of usury. Would an action lie for a breach of that agreement, in case the party should make the defense in disregard of it? It appears not, and the reason is, that the right to make the defense is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defense, and contravened by his refusal to make it. * * * With regard to all such matters of public policy, it would seem that no man can bind himself by estoppel not to assert a right which the law gives him on reasons of public policy.' There are cases wherein it is held that a promise not to plead the statute of limitations is a good bar, but they are those wherein the promise was made after the cause of action had accrued, and where it was considered by the court as a new promise. There are a few cases, however, which hold that an agreement not to plead the statute, made upon the instrument, or at the time of its execution, may be pleaded as an estoppel. So in Stoutenburg v. Lybrand, 13 Ohio St. 228, it was held that a contract which provides that a defendant in a proceeding for divorce shall make no defense thereto is against public policy, and therefore void."

There is the additional fact that the agreement provided that plaintiff might, on defendant's breach, sue out an injunction against him without notice. But, while the court adverted to that provision as unfair, it did not ground its decision on that unfairness, probably because defendant had been given notice of plaintiff's injunction suit.

[8] In that case the agreement not to contest validity covered both the patent in suit and other patents under which defendant was not licensed. The defendant was licensed under the patent in suit but only as to certain machines; the court held that, although the agreement could not be enforced as to the other patents, it would be enforced as to the patent in suit even as to machines not included in the license.

[9] The parties to the agreement called it a "license," but, as the court noted, in fact it was not; for the defendant, in consideration of licenses under another patent, agreed not to contest the validity of, and not to infringe, the patent in suit, under which defendant was granted no license.

cillary" agreements, which are obviously not pertinent,[10] and not noting the Pope Mfg. case. In American Specialty Stamping Co. v. New England Enameling Co., 2 Cir., 176 F. 557, 558, and H. D. Smith & Co. v. Southington Mfg. Co., 2 Cir., 247 F. 342, 343, it was said, without discussion, that where, threatened with an infringement suit, a defendant, not obtaining a license, agrees to admit the validity of a patent and not to infringe, he is bound by his agreement; but in neither of those cases was the Pope Mfg. case noted. It may be that, even aside from the Sola doctrine, the agreement in the instant case, under the doctrine of the Pope Mfg. case, is unenforceable, at least in equity.[11]

■ On one theory or another, it may be that the agreement here cannot bar an inquiry into the validity of the patent. Yet, as this issue was not raised in the trial court, there was no adequate opportunity to present evidence as to whether (a) the agreement does or does not violate the anti-trust laws and is legal under State law; or (b) the facts are such that, if violative of neither the anti-trust laws nor any other federal law nor the State law, the agreement does or does not come within the doctrine of the Pope Mfg. case; or (c) if plaintiff fails as to (a) and (b), the patent is or is not valid; or (d) if the patent is invalid and if the agreement is not illegal but comes within the Pope Mfg. Co. doctrine, still plaintiff is entitled to damages at law. Accordingly, we shall not now pass on the question of the patent's validity or that of recovery on the contract, but, "to the end that injustice may not be done," we shall now remand the case to the trial court with directions to vacate the decree and to hear evidence of the kind we have just described.[12]

■ The case, however, has been fully heard, here and below, on the issue of infringement and breach of agreement, and it will save time if we now decide that issue, assuming for the moment that the patent is valid or, if not, that the agreement is not illegal. The trial court correctly held for plaintiff on that issue of infringement. So crowded is this field that, in the light of the prior art now appearing in the record, the claims must be markedly narrowed, for they disclose a combination, at best not startlingly ingenious, of elements by no means novel in the art. (For that reason, our decision as to the scope of the claims can be of little interest to anyone except the parties to the suit, and we need not enlarge on the details of the claims or those of defendant's device.) However, no matter how narrowly the claims are construed, the defendant may not avoid infringement and breach of its agreement by an absurdly literal interpretation of words which, in ordinary usage, have a broad meaning. Consequently "cord loops" must be interpreted to include wire loops, since "cord" ordinarily includes wire as we speak of "picture cord". Moreover, while, with respect to such a patent as this, the doctrine of equivalence must be most cautiously employed, it is not, even here, so completely without efficacy that defendant can, as it has tried to do, escape infringement and the obligations of its agreement, by adopting contrivances which any mechanic skilled in the art would recognize at a glance to be obvious substitutes for those disclosed in the claims. Defendant's wires are straight throughout the major portion of their length and are therefore "substantially straight." In the patent, the cords or cord loops pass through the "eyes" of the wires, while, in the defendant's device, "hog rings" pass through the "eyes." These differentiated means used by the defendant are of a kind well-known in the art to be almost the precise equivalent of those in the patent. Defendant plainly infringed and violated its agreement (which, for the purposes of this discussion and for the time being, we assume to be valid).

■ There was no error in the refusal of the trial court to compel plaintiff to elect as between its two causes of action. The

---

[10] That case was decided before the Seventh Circuit was reversed in the Sola case, and the court made no reference to the anti-trust laws.

[11] The court, in the Pope Mfg. case, left open the possibility of recovery of damages at law for the breach of the agreement.

[12] Benz v. Celeste Fur Dyeing & Dressing Corp., 2 Cir., 136 F.2d 845, 848; United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423, 424, 22 S.Ct. 428, 46 L.Ed. 619; Estho v. Lear, 7 Pet. 130, 8 L.Ed. 632; Armstrong v. Lear, 8 Pet. 52, 74, 8 L.Ed. 863; Security Mortg. Co. v. Powers, 278 U.S. 149, 159, 160, 49 S.Ct. 84, 73 L.Ed. 236; Pfeil v. Jamison, 3 Cir., 245 F. 119; Finefrock v. Kenova Mine Car Co., 4 Cir., 22 F.2d 627, 634; Wyant v. Caldwell, 4 Cir., 67 F.2d 374; Columbus Gas & Fuel Co. v. City of Columbus, 6 Cir., 55 F.2d 56, 58.

two were not inconsistent. The elements of damage for breach of the contract (if valid) and for infringement of the patent (if valid) may well be different; to the extent that they may overlap, the trial court's order was fully protective of defendant.

Reversed and remanded, with directions in accordance with the foregoing opinion.