## STOKES & SMITH CO. v. TRANSPARENT-WRAP MACHINE CO.

### No. 20172.

Circuit Court of Appeals, Second Circuit.

April 18, 1947.

Writ of Certiorari Denied June 2, 1947.

See 67 S.Ct. 1524.

566

Samuel E. Darby, Jr., of New York City, for appellant.

R. Morton Adams, of New York City, for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The opinion of the Supreme Court, 67 S.Ct. 610, 616, concluded with these words: "The District Court found no violation of the anti-trust laws in the present case. The Circuit Court of Appeals did not reach that question. Hence it, as well as any other questions which may have been preserved, are open on our remand of the cause to the Circuit Court of Appeals. We only hold that the inclusion in the license of the condition requiring the licensee to assign improvement patents is not per se illegal and unenforceable." The plaintiff asserts that two questions "have been preserved": (1) Whether a violation of the Anti-Trust Acts is not disclosed upon the record; (2) whether the 11 patents of which the district judge directed the transfer were not within the terms of the Twelfth Article of the contract.

In answering the first of these we are confined to the four corners of the contract, for the record contains nothing else that is relevant. The plaintiff did indeed suggest at the argument that we ought to remand the case to the district court in any event to enable it to put in more evidence regarding the Anti-Trust Acts; but we should not be justified in doing so. The complaint contained no suggestion of any violation of these Acts; the plaintiff put in no evidence upon such an issue except in so far as the contract alone may be so regarded; and it did not argue either before us, or apparently before the district court, that the contract disclosed a violation. In Nachman Spring-Filled Corporation v. Kay Manufacturing Co., 139 F.2d 781, we decid-

ed that an agreement acknowledging the validity of a patent will not bar inquiry into its validity in an action of infringement. That decision is irrelevant here; this action does not concern the validity of the plaintiff's patents, but only their ownership; if in fact they are invalid, their transfer will add nothing to their false appearance of validity. It is true that there is a question—one which we shall consider in a moment—whether, when the defendant gets them, it will have unlawfully added to the monopoly of its own patents; but that is all we need, or shall, decide, leaving open all questions of their validity until the defendant seeks to assert them. We shall therefore confine ourselves to whether the contract itself shows that the defendant was engaged in a violation of the Anti-Trust Acts. In support of this plaintiff argues that, when the defendant fortified the monopoly of its own patents by acquiring the plaintiff's patents, it secured a "double monopoly," which was an unlawful restraint of trade, even though taken by itself the acquisition of those patents was lawful. The period, to which any such restraint is necessarily limited, is that during which both the Zwoyer patents and the plaintiff's patents will be in existence; for we must obviously disregard any period after the expiration of the Zwoyer patents, during which the plaintiff's patents may remain in force. In that period the defendant's control will be precisely the same as the plaintiff's would have been, had it not assigned. During what we may, however, call the joint period it is true that the defendant will have a monopoly, not only of the Zwoyer machine itself, but of any improvements upon it covered by the plaintiff's patents: verbally, that is a "double monopoly"; actually that phrase adds nothing to the defendant's control over production. No one will be able to use, make or vend the Zwoyer machine without its consent, and no one can use, make or vend an improvement without using, making or vending the machine improved. The defendant's control over the industry will be no greater by virtue of the improvement patents; all it will gain during the joint period is a freedom to add the improve-

ments to the Zwoyer machine, which it would not otherwise have had, for its license from the plaintiff terminated with the contract.

■■ Morever, even though the plaintiff had proved that there were machines which some of its own patents cover, but which the defendant's patents do not, the record would not be sufficient to raise any question of the Anti-Trust Acts. That would have shown that during the joint period, the defendant would have extended its control over the industry; but extension, merely as such, would not be enough. It would remain possible that, while the Zwoyer patents were in existence, any putative machines which they did not cover, and which the plaintiff's patents did cover, would not be important competitors with the Zwoyer machine itself; and it is hornbook law that not every restraint of competition is "unreasonable" and that only "unreasonable" restraints are unlawful. All this the plaintiff should have developed at the trial, if we were to pass upon it; upon the record as it comes to us, no restraint of trade appears—to say nothing of any "unlawful" restraint.

■ The second question is whether the 11 patents fall within the following language of Article Twelve of the contract: "If the Licensee shall discover or invent an improvement which is applicable to the Transwrap Packaging Machine and suitable for use in connection therewith and applicable to the making and closing of the package, but not to the filling nor to the contents of the package, it shall submit the same to the Licensor, which may, at its option, apply for Letters Patent covering the same." The plaintiff says that its 11 patents are not "improvements," or "suitable," and that besides they are for "filling" the package and therefore within the exception. Zwoyer, who was the only witness swore that the disclosures of the 11 patents were all of improvements upon his machine and were all suitable for use in connection with it. The plaintiff invites us to examine these patents and from our inspection to say that the judge's finding accepting Zwoyer's testimony was "clearly

erroneous." We are in no way qualified to do this; the diclosures are all on their face very closely akin to the Zwoyer machine, and it does not appear to persons inexpert in the subject that they are not "improvements" upon that machine, or are not "suitable for use in connection with" it. As before, if the plaintiff had meant to contest this issue, it should have done so at the trial.

Next as to whether the 11 patents are within the exception just quoted. In support of this the plaintiff invokes the claims allowed, some of which include the step of "filling" the package. There are two answers. First, the claims which the plaintiff secured from the Patent Office are wholly irrelevant; it had no right to take them out at all, for by doing so it deprived the defendant of a right which the contract gave it. The plaintiff had promised to "submit" any improvements it might "discover or invent," so that the defendant might take out its patents upon them. Whether the inventions were "improvements" and "suitable," and whether they were within the exception are to be decided without regard to the claims. Second, even if this were not true, the exception did not cover a machine which filled, as well as made and closed the package. The very language of the contract was that the improvements to be submitted were for machines not only "making," but "closing," the package, and the package must not be closed until it has been filled. All the specifications disclose closed packages, except No. 2,199,708, and that is for feeding the web out of which the packages are formed and is certainly "suitable" for closing them. For this conclusion we do not depend upon any testimony dehors the contract as to the purpose of the exception; indeed, the contract bears every indication of having been intended to be the final memorial of the obligations. It is enough that whatever was meant by "filling" the packages, it did not include machines which in "making and closing" them also filled them.

The plaintiff's effort to avoid the result of the Supreme Court's reversal is an afterthought—a tabula in naufragio. Its complaint, its evidence and its arguments in all three courts were based upon the point on which it has lost; it was the only point upon which it meant to stake the result, and that result it must abide.

Judgment affirmed.